**STATE of Tennessee**

v.

**Elmer W. CROSS.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Aug. 12, 2002.

Application for Permission to Appeal Denied By Supreme Court Dec. 9, 2002.

Ardena J. Garth, District Public Defender (on appeal), and Donna Robinson Miller (on appeal) and William Dobson (at trial), Assistant District Public Defenders, for the appellant, Elmer W. Cross.

Paul G. Summers, Attorney General & Reporter; Kathy D. Aslinger, Assistant Attorney General; and Lila Statom, Assistant District Attorney General, for the appellee, State of Tennessee.

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA McGEE OGLE, JJ., joined.

## OPINION

The defendant, Elmer W. Cross, entered pleas of guilt to presenting a fraudulent insurance claim and arson. *See* Tenn.Code Ann. §§ 39–14–133, 39–14–301. The trial court imposed Range I concurrent sentences of three years, granted probation for 10 years, and ordered restitution to his residential insurer in the amount of $24,752.03. In this appeal of right, the defendant asserts that the insurer is not a "victim" within the meaning of the statutory provisions authorizing restitution. *See* Tenn.Code Ann. § 40–35–304; *State v. Alford,* 970 S.W.2d 944 (Tenn.1998) (holding that "the victim's insurer cannot be awarded restitution under Tenn.Code Ann. § 40–35–304"). Because the insurer in this case was the actual victim of the crimes, the judgments of the trial court are affirmed.

■ According to the stipulated facts, on September 29, 1996, "the defendant ... set [a mobile home that he owned] on fire for the purpose of obtaining insurance money on that location and actually did obtain the insurance to pay for the structure." The state introduced proof that the

defendant's residential insurer, Nationwide Insurance Company, paid $24,752.03 on the policy. Relying upon *State v. Alford*, 970 S.W.2d 944 (Tenn.1998), in which our supreme court held that an award of restitution to an assault victim's medical insurance carrier was not permitted under Tennessee Code Annotated § 40–35–304, defense counsel argued that restitution would be improper because Nationwide was not a "victim" within the meaning of the statute. The trial court ultimately ordered restitution to Nationwide in the full amount, ruling as follows:

> [*State v. Alford*] is different because in this case, the case of insurance fraud, the victim is the insurance company. When you are defrauding an insurance company, [it is] the direct victim so I distinguish this case on that ground.

In this appeal, the defendant asserts that the trial court erred by ordering restitution to Nationwide, contending that an insurance company is not a "victim" within the contemplation of Tennessee Code Annotated § 40–35–304. The statute, which governs restitution as a condition of probation, provides in pertinent part as follows:

> (a) A sentencing court may direct a defendant to make restitution to *the victim of the offense* as a condition of probation.

> (b) Whenever the court believes that restitution may be proper or *the victim of the offense* or the district attorney general requests, the court shall order the presentence service officer to include in the presentence report documentation regarding the nature and amount of *the victim's* pecuniary loss.

> (c) The court shall specify at the time of the sentencing hearing the amount and time of payment or other restitution to *the victim* and may permit payment or performance in installments. The court may not establish a payment or performance schedule extending beyond the statutory maximum term of probation supervision that could have been imposed for the offense.

> (d) In determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform.

> (e) For the purposes of this section, "pecuniary loss" means:

> (1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and

> (2) Reasonable out-of-pocket expenses incurred by *the victim* resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

> (f) A defendant, *victim* or district attorney general at any time may petition the sentencing court to adjust or otherwise waive payment or performance of any ordered restitution or any unpaid or unperformed portion thereof. The court shall schedule a hearing and give *the victim* and the defendant notice of the hearing, including the date, place and time and inform *the victim* and defendant that each will have an opportunity to be heard. If the court finds that the circumstances upon which it based the imposition or amount and method of payment or other restitution ordered no longer exist or that it otherwise would be unjust to require payment or other restitution as imposed, the court may adjust or waive payment of the unpaid portion thereof or other restitution or modify the time or method of making restitution. The court may extend the restitution schedule, but not beyond the term of probation supervision.

Tenn.Code Ann. § 40–35–304(a)–(f) (emphasis added).

In matters of statutory construction, the role of this court is to ascertain and give effect to the intent of the legislature. *State v. Williams,* 623 S.W.2d 121, 124 (Tenn.Crim.App.1981). Unless ambiguity requires resort elsewhere to ascertain legislative intent, judicial interpretation of a statute is restricted to the natural and ordinary meaning of the language used. *Roddy Mfg. Co. v. Olsen,* 661 S.W.2d 868, 871 (Tenn.1983). "Legislative enactments must be interpreted in their natural and ordinary sense without a forced construction to either limit or expand their meaning." *State v. Thomas,* 635 S.W.2d 114, 116 (Tenn.1982). "Courts must construe statutes as a whole and in conjunction with their surrounding parts and their interpretation should be consistent with their legislative purposes." *State v. Turner,* 913 S.W.2d 158, 160 (Tenn.1995). The meaning of a statute is to be determined not from specific words in a single sentence or section but from the act in its entirety in light of the general purpose of the legislation; any interpretation should express the intent and purpose of the legislation. *National Gas Distrib., Inc. v. State,* 804 S.W.2d 66, 67 (Tenn. 1991); *Loftin v. Langsdon,* 813 S.W.2d 475, 478–79 (Tenn.Ct.App.1991). "The cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being [aids] to that end." *Browder v. Morris,* 975 S.W.2d 308, 311 (Tenn.1998).

In *State v. Alford,* the defendant was convicted of aggravated assault in connection with a stabbing and was ordered to pay restitution of $68,589.09 to the victim's insurance carrier, which paid the medical expenses. 970 S.W.2d at 945. Construing the language of Tennessee Code Annotated § 40–35–304, our supreme court held

that the statute did not authorize restitution to the carrier:

> [I]t is apparent that the word "victim" refers to the individual or individuals against whom the offense was actually committed. Nothing in the statute supports a broader application.
>
> Additionally, a victim's insurer is not within the natural and ordinary meaning of "victim." This is true because an insurer's payment of medical or other expenses is made pursuant to a contractual obligation. . . . Rather, an insurer contracts to accept the risk that claims will be made under the contract of insurance. Therefore, the guidance offered from the language of the statute is that the legislature did not intend "victim" to apply to insurers in this context.

*Id.* at 946; *see also State v. Horace William Miley,* No. 02C01–9810–CC–00317 (Tenn.Crim.App., at Jackson, June 17, 1999) (relying on *Alford* for reversal of order of restitution to victim's insurer in arson case); *State v. Joy Schmidt,* No. 02C01–9710–CR–00395, 1999 WL 360170 (Tenn.Crim.App., at Jackson, June 7, 1999) (reversing order of restitution to theft victim's insurer based on *Alford* ).

In our view, *State v. Alford* is distinguishable. In *Alford,* the defendant committed an aggravated assault that resulted in physical injuries to the victim. The victim's medical carrier incurred liability only because the victim sought and received coverage for his medical expenses. Our supreme court held that "the Tennessee [l]egislature neither envisioned nor intended restitution to apply to *insurers which pay claims made under an insurance contract.*" 970 S.W.2d at 947 (emphasis added). In this case, however, the defendant was convicted of presenting a fraudulent insurance claim, defined by statute as follows:

Any person who intentionally presents or causes to be presented a false or fraudulent claim, or any proof in support of such claim, for the payment of a loss, or other benefits, upon any contract of insurance coverage, or automobile comprehensive or collision insurance, or certificate of such insurance or prepares, makes or subscribes to a false or fraudulent account, certificate, affidavit or proof of loss, or other documents or writing, with intent that the same may be presented or used in support of such claim, is punished as in the case of theft.

Tenn.Code Ann. § 39–14–133. As such, Nationwide's loss was the result of the fraudulent claim made directly against it by the defendant. That, of course, is different from the circumstances in *Alford*, where the loss to the insurer was the result of the victim's claim.

In *Commonwealth v. Layhue*, 455 Pa.Super. 89, 687 A.2d 382 (1996), the Superior Court of Pennsylvania was faced with a nearly identical issue. Layhue, who was convicted of conspiring to destroy a car by fire in order to obtain insurance proceeds, was ordered to pay restitution to the insurer. Relying on *Commonwealth v. Galloway*, 302 Pa.Super. 145, 448 A.2d 568 (1982), in which the Pennsylvania Superior Court held that a fire insurance company was not a victim entitled to restitution because its obligation was contractual in nature, the defendant argued that the order of restitution was illegal. The court disagreed, however, ruling that the *Galloway* decision did not preclude an order of restitution to an insurer that is an actual victim of criminal conduct:

> There are, of course, cases of fraudulent claims or other criminal misconduct in dealing with an insurer where the only victim is an insurance company. Surely in such case, *Galloway* did not intend to

prohibit an order of restitution. Rather, we interpret the *Galloway* majority as prohibiting an order of restitution where the insurer's loss is merely consequential to the criminal conduct. In *Galloway*, the arson was part of a course of conduct intended to harm defendant's wife. Similarly, [Com. v.] *Mathis*[, 317 Pa.Super, 464 A.2d 362 (Pa.Super. 1983)] is an assault case, where the insurer's liability for medical expenses is consequential to the treatment for injuries sustained in the assault upon the intended victims. Thus, in neither case was there evidence which would support an intention to extract payments from an insurer. As the colloquy in this case demonstrates, appellant was charged with (and plead nolo contendere to) an arson or explosion to a car in order to collect insurance. This places the insurance company in the posture of being the intended victim of the crime and we conclude that the restitution order is neither illegal nor impermissible under the controlling cases and statutes....

687 A.2d at 383–84.

■ In our view, the Tennessee legislature did not intend to preclude insurers that are actual victims of crime and that sustain resultant losses from receiving restitution. When an insurance company pays a victim's medical or other expenses, it is pursuant to a policy obligation. Thus, the insurer has contracted to accept the risk of claims, does not sustain any unexpected harm, and, under our statute, is not entitled to restitution as a condition of probation. *Alford*, 970 S.W.2d at 946. This rationale, however, is inapplicable where the insurer is an actual victim. By contrast, Nationwide accepted the risk of loss relative to the defendant's residence; it did not accept the risk of fraud by its

insured.[1] *See Adkins v. State,* 781 A.2d 692 (Del.2001) (affirming award of restitution to insurer where the defendant was convicted of arson and insurance fraud); *State v. Kaine,* 1999 WL 1044508, 1999 Ohio App. LEXIS 5467 (Ohio Ct.App. Nov. 18, 1999) (affirming revocation of the defendant's probation for failure to pay restitution to insurer in arson and insurance fraud case); *see also People v. Mangan,* 258 A.D.2d 819, 686 N.Y.S.2d 506 (N.Y.App.Div.1999) (permitting restitution to residential insurer of defendant convicted of arson).

Accordingly, the judgments of the trial court are affirmed.

---

**1.** Moreover, Tennessee Code Annotated § 40–20–116 provides, in pertinent part, that "[w]henever a felon is convicted of stealing ... property, or defrauding *another* thereof, the jury shall ascertain the value of such property, if not previously restored to the *owner,* and the court shall, thereupon, order the restitution of the property, and, in case this cannot be done, that *the party aggrieved* recover the value assessed against the prisoner...." Tenn.Code Ann. § 40–20–116(a) (emphasis added). The statute also provides that its "provisions ... are cumulative, and do not deprive *the party injured* of any other right the party may have for the recovery of property or its value." Tenn.Code Ann. § 40–20–116(c) (emphasis added).