IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 14, 2004

## STATE OF TENNESSEE v. DONNIE LOMAX

**Direct Appeal from the Circuit Court for Houston County**
**No. 4572     Allen W. Wallace, Judge**

_____

**No. M2003-01443-CCA-R3-CD - Filed August 4, 2004**

_____

The defendant, after entry of a plea of guilty, appeals from the imposition of consecutive sentences, the denial of alternative sentencing, and the requiring of restitution to be paid to an entity not named as a victim in the indictment. Upon careful review, we affirm the respective sentences and the denial of alternative sentencing, but reverse the imposition of consecutive sentencing. The cause is remanded for additional hearing for determination of Automotive Financing Corporation's victim status and if so established, the amount of restitution. We further direct that the recipient of the restitution for sales tax and clerk fees be changed from the State of Tennessee to the individuals named in the indictments who paid the sales tax and clerk fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part,**
**Reversed in Part, and Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined. JOSEPH M. TIPTON, J., filed a separate opinion concurring in part and dissenting in part.

Jack L. Garton, Dickson, Tennessee, for the appellant, Donnie Lomax.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Dan Mitchum Alsobrooks, District Attorney General; and Carey J. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Donnie Lomax, pled guilty to four counts of theft (Counts 1, 5, 9, and 13) and one count of tax evasion (Count 3).[1] Of the theft offenses, Count 1 was a Class C felony and the others were Class D. The tax evasion offense was a Class E felony. At the sentencing hearing, the

---

[1] The judgment form for Count 9 is not included in the record on appeal. Page 47 is absent from the sentencing hearing transcript.

defendant was sentenced to three years on Count 1, with confinement in excess of nine months suspended.  Restitution was ordered to be paid to Automotive Financing Corporation in the amount of $76,231.63 and to the State of Tennessee in the amount of $6,249.50.  Two-year sentences were imposed on Counts 5, 9, and 13.  A one-year sentence was imposed on Count 3.  All sentences were concurrent, with the exception of Count 3 which was ordered served consecutively to Count 1 for an effective sentence of four years.

## Facts

The defendant had engaged in a systematic course of conduct whereby he obtained vehicles from two separate auto auctions and accepted payment from the customers for the vehicles and sales tax.  The auto auctions withheld delivery of titles to the vehicles due to nonpayment.  Evidence at the sentencing hearing indicated that the defendant had accepted payments for five vehicles without making payments to the lien holders.  The exact roles of the two auto auctions, Murray and Bowling Green, and a third entity, Automotive Financing Corporation (AFC), were not expressly detailed in the record.  The defendant's wife, an employee at the defendant's business, characterized AFC as a finance company who provided the defendant's floor plan.  The defendant testified that "AFC, they just run a credit check on me and gave me like a hundred thousand dollar floor plan."  The testimony at the sentencing hearing indicated AFC was due restitution in the sum of $76,231.63.  This amount of restitution was included in the judgment of Count 1.

To address unpaid sales tax and clerk fees, the trial court ordered the defendant to pay restitution to the State of Tennessee in the sum of $6,249.50.  However, the uncontradicted evidence indicated that the State had been paid by the victims, therefore the individual victims were the appropriate recipients of this restitution.

## Sentencing

In his appeal of the sentence, the defendant alleges that the trial court erred:
a.  in not finding the defendant an especially mitigated offender;
b.  in imposing an excessive sentence; and
c.  in ordering restitution to Automotive Financing Corporation.

When a sentence is challenged on appeal, our review is *de novo* with a presumption of correctness.  Tenn. Code Ann. § 40-35-401(d).  The presumption is conditional in that the record must affirmatively reflect that the trial judge considered the sentencing principles and all relevant facts and circumstances.  State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999).

The burden is upon the appealing party to show that the sentence is improper.  Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments.  In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

(1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

If no mitigating or enhancement factors for sentencing are present, Tennessee Code Annotated section 40-35-210(c) provides that the presumptive sentence for most offenses shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e); State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record. State v. Madden, 99 S.W.3d 127, 138 (Tenn. Crim. App. 2002); see Tenn. Code Ann. § 40-35-210, Sentencing Commission Comments

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

The defendant argues that the trial court erred in failing to sentence him as an especially mitigated offender. At sentencing, the State stipulated that there were no applicable enhancement factors. The only mitigating factor found appropriate by the trial court was that the conduct of the defendant neither caused nor threatened serious bodily injury. The language of Tennessee Code Annotated section 40-35-109 indicates that it is discretionary on the part of the trial court to sentence as an especially mitigated offender:
>    (a) The court may find the defendant is an especially mitigated offender, if:
>       (1) The defendant has no prior felony convictions; and
>       (2) The court finds mitigating but no enhancement factors.

(Emphasis added.)

The defendant cites State v. Blackstock, 19 S.W.3d 200, 211-12 (Tenn. 2000), in support of his position. We feel that Blackstock is factually distinguishable from the instant case. Blackstock involved a defendant with an IQ of 55 and no enhancement factors. The defendant's mental limitations and low functioning were viewed by our supreme court as "substantial mitigating factors." Id. at 212. Accordingly, the failure to sentence the defendant as an especially mitigated offender was held to be error.

The mitigating factor present in the instant case is not entitled to the gravity of a substantial mitigating factor. It is of slight credit to the defendant that in taking advantage of the victims financially that he did not threaten or cause them serious physical harm. The refusal to sentence the defendant as an especially mitigated offender was within the trial court's discretion and was not error.

The defendant asserts that he should have received probation, that the sentence was excessive, and that consecutive sentencing was improper. The State concedes that no basis existed for imposition of consecutive sentences but contends that confinement was proper. Tennessee Code Annotated section 40-35-115 sets forth certain limited criteria when consecutive sentencing is proper. None of the listed criteria are applicable to the defendant. We agree that the imposition of consecutive sentencing was in error.

In arguing in support of full probation, the defendant correctly points out that as a standard offender of a Class C, D, or E felony, he is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(b). The defendant listed several factors as supporting full probation: he is 54 years old, married with a minor child, possesses a long work history and a supportive family, continues to work to pay debts, and has no prior felony convictions.

The defendant has the burden of establishing suitability for full probation. See Tenn. Code Ann. § 40-35-303(b); State v. Bingham, 910 S.W.2d 448, 455-56 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1 (Tenn. 2000). The following factors are relevant in determining whether a defendant has satisfied this burden: the nature and circumstances of the criminal conduct, Tenn. Code Ann. § 40-35-210(b)(4); the defendant's potential or lack of potential for rehabilitation, Tenn. Code Ann. § 40-35-103(5); whether a sentence of total probation would unduly depreciate the seriousness of the offense, Tenn. Code Ann. § 40-35-103(1)(B); and whether a sentence other than total probation would provide an effective deterrent to others, Tenn. Code Ann. § 40-35-103(1)(B).

Herein the trial court emphasized the seriousness of the defendant's offense in denying full probation. To deny an alternative sentence on these grounds, the offense "'must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or an exaggerated degree,'" and the nature of the offense must outweigh all other factors, favoring a sentence alternative to confinement. Bingham, 910 S.W.2d at 454 (quoting State v. Hartley, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991)). However, circumstances that do not rise to the level to justify denial of any alternative sentence may nevertheless justify a denial of full probation. Id. at 456. A defendant's lack of credibility may reflect on the potential for rehabilitation. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). A defendant's failure to acknowledge culpability for his actions may support a finding that a sentence of confinement is necessary to avoid depreciating the seriousness of an offense. State v. Gutierrez, 5 S.W.3d 641, 647 (Tenn. 1999).

In considering the sentencing principles, the trial court observed:

The confinement is necessary for depreciating the seriousness of the offense, that does apply in this case. This is a serious offense. It had a lot of victims and a lot of people that probably Mr. Lomax works around everyday. He works hard for a living and goes down here; and not only gets ripped off, pays sales tax and that never gets paid. Now that is serious. You take working people goes to a car lot or anywhere else and that -- he said something about car dealers awhile ago, but people like Mr. Lomax gives them a bad name.

The trial court found the defendant was less than candid and forthcoming, as evidenced by the following observations:

[The defendant] half way cooked my goose in this case when he was testifying up here and I never could get him to answer a question directly, you know, I don't like people to lie to me.

. . . .

You can't get a straight answer from [the defendant]; and that bothers me; and a man comes up here that ripped off eighty thousand dollars from people, sales tax and everything else; and then I can't get a straight answer from him about nothing.

You ask him a question, it's like he wants to tell you a story and never answers the question. You know, that's just being evasive. That shows a conduct that I don't like. That shows a conduct that is going to cause some problems.

In spite of the social factors enumerated in favor of the defendant, his lack of candor and failure to accept responsibility for his actions justified the denial of full probation.

**Restitution**

The defendant contends on appeal that the trial court was without authority to order restitution to Automotive Financing Corporation (AFC). The defendant bases this on the contention that AFC was "not a victim of any crime." The defendant points to the absence of AFC from being named as a victim in any indictment against the defendant and further relies on the authority of State v. Alford, 970 S.W.2d 944 (Tenn. 1998).

Our supreme court in Alford dealt with whether a hospitalization insurance carrier can be a "victim" and receive restitution from a defendant pursuant to Tennessee Code Annotated section 40-35-304(a). The court concluded that insurers did not fall within the narrow definition of "victim," which it defined as "the individual or individuals against whom the offense was actually committed." The court noted that criminal courts lack inherent authority to order restitution except as derived from legislative enactment. Alford, 970 S.W.2d at 945; State v. Davis, 940 S.W.2d 558, 562 (Tenn. 1997). The court applied the rules of statutory construction and considered the legislative history in reaching its ultimate decision. Alford, 970 S.W.2d at 946-47. With regard to the victims' insurers in particular, it noted that insurers' liability is contractual, and the risk of claims is assumed pursuant to the contract. Id. at 946.

We apply the guidance of Alford in answering the threshold question as to the status of AFC as a "victim." Although the record is unclear, it seems AFC was not an insurer in the sense that it had assumed a risk in return for premiums paid by the defendant. The individuals who bought vehicles from the defendant received their vehicles but were victimized when they were unable to obtain clear titles of ownership. If AFC's role was that of supplying financing for the defendant, it may have been victimized when its collateral was sold and the proceeds therefrom diverted by the defendant. We have previously construed "victim" as "refer[ring] to the individual or individuals against whom the offense was actually committed. Nothing in [Tennessee Code Annotated section 40-35-304] supports a broader application." State v. Cross, 93 S.W.3d 891, 894 (Tenn. Crim. App. 2002). We consider an entity as tantamount to an individual and do not consider the failure to include its mention in the indictment as an excuse for the defendant to escape his obligation to make restitution. We conclude that omission of the victimized entity from the indictment is not dispositive when the entity is clearly a victim of the subject criminal charge contained in the indictment.

In determining the propriety of the restitution as ordered paid to AFC, it is instructive to review the pertinent provisions of the statute, Tennessee Code Annotated section 40-35-304:
   (a) A sentencing court may direct a defendant to make restitution to the victim of the offense as a condition of probation.
   (b) Whenever the court believes that restitution may be proper or the victim of the offense or the district attorney general requests, the court shall order the presentence service officer to include in the presentence report documentation regarding the nature and amount of the victim's pecuniary loss.
   (c) The court shall specify at the time of the sentencing hearing the amount and time of payment or other restitution to the victim and may permit payment or performance in installments. The court may not establish a payment or performance schedule extending beyond the statutory maximum term of probation supervision that could have been imposed for the offense.
   (d) In determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform.
   (e) For the purposes of this section, "pecuniary loss" means:
      (1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and
      (2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.
   (f) A defendant, victim or district attorney general at any time may petition the sentencing court to adjust or otherwise waive payment or performance of any ordered restitution or any unpaid or unperformed portion thereof. The court shall schedule a hearing and give the victim and the defendant notice of the hearing, including the date, place and time and inform the victim and defendant that each will have an opportunity to be heard. If the court finds that the circumstances

upon which it based the imposition or amount and method of payment or other restitution ordered no longer exist or that it otherwise would be unjust to require payment or other restitution as imposed, the court may adjust or waive payment of the unpaid portion thereof or other restitution or modify the time or method of making restitution. The court may extend the restitution schedule, but not beyond the term of probation supervision.

The presentence report filed in this cause contained two entries bearing on the issue of restitution.

Victim's Statement:

During a conversation with D.A. Carrie(e) Thompson, this writer was told there were no individual victims, since the titles were released. Mr. Thompson further stated the victims are now the auction houses from where Mr. Lomax had originally purchased the vehicles. Mr. Thompson also indicated the State of Tennessee as a victim, as to the loss of revenue in Count 3, failure to pay sales tax.

Comments:

[The d]efendant stated he is paying restitution for his conviction in Kentucky in the amount of $650.00. Mrs. Lomax verified this information as $648.80. [The d]efendant stated he is also paying restitution to Tradition's Bank in the amount of $400.00 per month and $400.00 to Murray Auto Action associated with this case. D.A. Carrie Thompson told this writer he would be seeking a court order regarding restitution.

The only entry regarding restitution on the judgment form was as follows: "Defendant shall pay restitution to Automotive Financing Corp in the amount of $76,231.63 and pay to the State of Tennessee the amount of $6,249.50." The State of Tennessee was designated as the recipient despite the agreement at the sentencing hearing that the individuals were the proper parties to receive restitution. The amount to be paid to the State must be paid instead to the individual victims according to their respective interests.

Tennessee Code Annotated section 40-35-304(c) requires the court to specify at the sentencing hearing the amount and time of payment and allows for payment schedules. The amount and method is to be determined by considering the financial resources and future ability of the defendant to pay. Id. at (d).

The record reveals that the plea of guilty was entered on January 30, 2003. On the same date, an Order of Nolle Prosequi was entered as to Counts 2, 4, 6-12, and 14-56. The amount of sales tax restitution was agreed upon at the time of the entry of the guilty plea. The transcript of the sentencing hearing contains an intimation, but not evidence, of an agreed amount of restitution as to AFC. The assistant district attorney, in prefacing a question, stated: "[a]nd I believe we've agreed prior to a restitution figure." The record does not contain any confirmation of an agreement to pay restitution of any amount to AFC. Counsel for the defendant did recognize the defendant's

obligation to pay restitution of some form. In addressing the trial court, counsel stated "[the defendant] recognizes his obligation to pay all these people back. . . . I would ask, Your Honor, to consider a period of probation, supervised probation for him; and let him have an opportunity to pay these folks back."

Due to the state of the record before us, we are unable to conclude that AFC was a "victim." The record is unclear as to how and to what extent AFC was victimized by the defendant. Consequently, we are left to speculate as to AFC's purported right to restitution. We decline to do so. However, the amount claimed by AFC is a significant sum. In addition, the record indicates that the State, at least, believed the issue of restitution had been agreed upon. It is understandable then that proof was not developed to justify AFC's status as a victim and, if so established, to prove the exact amount due after AFC after all proper credits. We feel it appropriate to remand this matter for further hearing on the issue of whether AFC was in fact victimized by the defendant's offenses. In the event that AFC's status as a victim is established, then the trial court shall establish the appropriate amount of restitution in conformity with Tennessee Code Annotated section 40-35-304.

For the foregoing reasons, we reverse the order of consecutive sentencing. We remand for an additional hearing to determine whether AFC meets the status as a victim and, if so, in what amount. We further order that restitution for sales tax and clerk fees be paid to the individuals according to their respective interests, instead of the State. The cause is hereby remanded for entry of an order in accordance with the terms herein.

_____
JOHN EVERETT WILLIAMS, JUDGE