32 Cal.Rptr.3d 518 (2005)
131 Cal.App.4th 1076
The PEOPLE, Plaintiff and Respondent,
v.
Daniel John SAINT-AMANS, Defendant and Appellant.
No. A105413.
Court of Appeal, First District, Division Two.
July 18, 2005.
*519 Robert V. Vallandigham, Jr., Sausalito, CA, Under Appointment by the Court of Appeal, for Appellant.
Bill Lockyer, Attorney General, Robert P. Anderson, Chief Asst. Atty. Gen., Gerald A. Engler, Sr. Asst. Atty. Gen., Seth K. Schalit, Supervising Deputy Atty. Gen., Jeffrey M. Bryant, Deputy Attorney General, for Respondent.
KLINE, P.J.

Introduction
After Daniel John Saint-Amans (appellant) pleaded guilty to one count of commercial burglary (Pen.Code, § 459[1]), the trial court ordered appellant to pay $10,000 restitution to Washington Mutual Bank (the bank) pursuant to section 1202.4. On appeal, appellant contends that the trial court erred by ordering restitution to an entity that was not a "direct victim" of the crime. (§ 1202.4, subd. (k)(2).) We shall affirm the restitution order.

Facts and Procedural Background[2]
Appellant opened a bank account at the bank's Terra Linda branch on October 25, 2001. The same day, a joint account was opened by phone banking under the names of William Dillon and appellant. Through a series of transactions, $35,000 was transferred from Dillon's account to the joint account, and then from the joint account to appellant's individual account. Appellant successfully withdrew $15,000 of this money. Bank employees became suspicious on May 30, 2001, when appellant requested to withdraw $20,000 cash at the bank's Corte Madera branch. On May 31, 2001, the bank called the Twin Cities police, leading to appellant's arrest.
On January 24, 2002, appellant pleaded guilty to one count of commercial burglary in violation of section 459.
Appellant's probation officer submitted a presentence report dated April 23, 2002, which the court read and considered. In the report, Dillon stated that he did not suffer any loss because the Federal Deposit Insurance Corporation (FDIC) covered his losses. The report also stated that the bank had submitted a restitution claim seeking $15,000, the full amount taken by appellant. The probation officer recommended that appellant be required to pay restitution to the bank as a condition of probation.
On May 17, 2002, the trial court held a sentencing hearing. During the proceedings, neither party objected to the factual accuracy of the probation report. Appellant objected to the restitution order, arguing that the bank was not the victim of the burglary because it did not suffer a financial loss. The probation officer stated that *520 the part of his report stating the bank's loss as $15,000 was incorrect because the bank had corresponded with him, indicating it had "no expenses" and that it had not yet claimed any losses. The court responded, "the folks who took the money should not get away either," and stated it would order restitution to some person or agency legitimately entitled to restitution.[3] The court sentenced appellant to three years of supervised probation. Appellant's conditions of probation required him to pay restitution in an amount and manner to be decided by the probation officer, subject to court review on appellant's timely objection.
Supplemental documents were added to the probation report prior to the restitution hearing. Included was the bank's April 12, 2002 restitution claim form for $15,000 for losses due to forgery and customer impersonation. That form also contained a statement that "[a]fter recovery from all sources, [the bank's] `out-of-pocket' expenses are: $0." The probation report also contained a letter from Danielle Dixon of the bank's loss processing department dated January 23, 2003. The letter states that the original paperwork documenting the bank's loss at $15,000 was recorded incorrectly, and the remaining amount owed on the account was $10,000.
At the restitution hearing on January 13, 2004, appellant argued that Dillon, not the bank, was the direct victim of appellant's crime and was the only one entitled to restitution. At the outset, defense counsel stated, "... I told [the prosecutor] that I don't think we, after speaking with my client today, we need to take testimony on the amount of restitution. I would like to raise a legal issue about the restitution and just make it that brief, Your Honor, and then as to the amount we can stipulate." The People noted the presence at the hearing of a fraud investigator for the bank who could explain why the amount owed was $10,000. The court declined to hear from the investigator, stating that the amount was not at issue, but rather who was entitled to that amount. The People asserted, "I'm informed and believe from the investigator that Washington Mutual has since paid Mr. Dillon back because he had completed an application of forgery, and now the Washington Mutual Bank stands as a victim of a direct loss." Appellant did not offer any contrary evidence when prompted by the court. The court determined that the bank was the victim because appellant had pleaded guilty to burglarizing the bank and the probation report indicated that the bank lost the money it gave to appellant. The court ordered appellant to pay $10,000 restitution to the bank.
Appellant filed a timely appeal challenging the restitution order on January 23, 2004.

Discussion
In 1982, California voters amended the state Constitution by initiative to provide restitution to crime victims. Article I, section 28, subdivision (b) states:
"It is the unequivocal intention of the People of the State of California that all *521 persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer.
"Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary." (Cal. Const., art. I, § 28, subd. (b).)
The Legislature subsequently passed implementing legislation, which has been amended several times. (See Historical and Statutory Notes, Deering's Ann. Pen. Code (1993 ed. & 2005 supp.) foll. § 1202.4, pp. 271-272, 104-107.) In its current form, section 1202.4 requires an individual convicted of a crime to pay restitution to a victim who suffers "any economic loss" resulting from the crime. (§ 1202.4, subd. (a)(1).) "Victim" includes "[a]ny corporation . . . or any other legal or commercial entity when that entity is a direct victim of a crime." (§ 1202.4, subd. (k)(2), italics added.)
To be entitled to restitution, the bank must have (1) suffered an economic loss, and (2) be considered a "direct victim" under the statute. Appellant contends that the bank meets neither of these conditions.

I. Substantial Evidence Supports the Trial Court's Conclusion That the Bank Suffered an Economic Loss
"In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1. [Citations.] `The court may impose and require . . . [such] reasonable conditions[] as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer.' (Pen.Code, § 1203.1, subd. (j).) The trial court's discretion, although broad, nevertheless is not without limits: a condition of probation must serve a purpose specified in the statute. In addition, we have interpreted Penal Code section 1203.1 to require that probation conditions which regulate conduct `not itself criminal' be `reasonably related to the crime of which the defendant was convicted or to future criminality.' [Citation.] As with any exercise of discretion, the sentencing court violates this standard when its determination is arbitrary or capricious or `"`exceeds the bounds of reason, all of the circumstances being considered.'" [Citations.]' [Citation.]
"Restitution has long been considered a valid condition of probation. [Citation.] Penal Code section 1203.1 requires trial courts to `consider whether the defendant as a condition of probation shall make restitution to the victim or the Restitution Fund,' and requires the court to `provide for restitution in proper cases.' (Pen.Code, § 1203.1, subds. (b) & (a)(3).)" (People v. Carbajal (1995) 10 Cal.4th 1114, 1120-1121, 43 Cal.Rptr.2d 681, 899 P.2d 67 (Carbajal), fn. omitted.)
"Restitution orders may not be based merely upon the trial court's subjective belief regarding the appropriate compensation; there must be a factual and rational basis for the amount ordered and the defendant must be permitted to dispute the amount or manner in which restitution is to be made. (Pen.Code, § 1203.1k; see also In re Brian S. [(1982)] 130 Cal.App.3d [523,] 532, 181 Cal.Rptr. 778.)" (Carbajal, supra, 10 Cal.4th at p. 1125, 43 Cal.Rptr.2d 681, 899 P.2d 67.)
*522 Appellant argues that the bank did not suffer any loss, relying upon Dillon's statement that the FDIC reimbursed his account. However, the record here contains substantial evidence of the bank's loss. The report includes the bank's restitution claim form seeking restitution for forgery-customer impersonation. A reasonable trier of fact could conclude from this document that the bank reimbursed Dillon after he completed an application of forgery. The bank's January 23, 2003 letter from its loss processing department also evidences the bank's loss and states that the amount owed is $10,000.
Furthermore, at the restitution hearing, the prosecutor stated that a fraud investigator was present to explain why the bank's loss was $10,000. The People stated that they were "informed and believe from the investigator that Washington Mutual has since paid Mr. Dillon back because he had completed an application of forgery . . . ."
Appellant did not contest the factual accuracy of the probation officer's report or present any evidence to the contrary below. Rather, appellant argues on appeal that the bank suffered no loss because the FDIC reimbursed Dillon's account. However, the record contains substantial evidence showing that the bank suffered a loss. The bank's restitution claim form and letter provide an adequate factual basis. Moreover, defense counsel's statement that "I don't think we . . . need to take testimony on the amount of restitution," effectively conceded the issue below.
Appellant's argument is also inconsistent with the restitution statute and California case law. Section 1202.4, subdivision (f)(2) states, "determination of the amount of restitution ordered pursuant to this subdivision shall not be affected by the indemnification or subrogation rights of any third party." Courts have interpreted subdivision (f)(2) to mean that a victim's mitigation of losses does not offset restitution. (People v. Birkett (1999) 21 Cal.4th 226, 246-248 & fns. 19, 21, 87 Cal.Rptr.2d 205, 980 P.2d 912 (Birkett); People v. Hamilton (2003) 114 Cal.App.4th 932, 939-940, 8 Cal.Rptr.3d 190; People v. Bernal (2002) 101 Cal.App.4th 155, 161, 123 Cal.Rptr.2d 622; In re Brittany L. (2002) 99 Cal.App.4th 1381, 1387-1388, 122 Cal.Rptr.2d 376; People v. Hove (1999) 76 Cal.App.4th 1266, 1270, 91 Cal.Rptr.2d 128.)
Appellant effectively conceded the issue below. In any event, viewed in the light most favorable to the judgment, the record contains substantial evidence that the bank sustained a loss.

II. The Bank is a Direct Victim Under Section 1202.4
Whether the bank can be a "direct victim" under section 1202.4 is a legal issue of statutory construction, which we review under an independent or de novo standard. (People v. San Nicolas (2004) 34 Cal.4th 614, 642, 21 Cal.Rptr.3d 612, 101 P.3d 509.)
In undertaking this analysis, we are mindful that the California Constitution gives trial courts broad power to impose restitution on offenders. (Cal. Const., art. I, § 28, subd. (b).) Article I, section 28, subdivision (b) declares unequivocally that "all persons who suffer losses" due to crime have the right to restitution. (Italics added.) Accordingly, the courts have held that restitution statutes should be interpreted broadly and liberally. (In re Johnny M. (2002) 100 Cal.App.4th 1128, 1132, 123 Cal.Rptr.2d 316; see also People v. Mearns (2002) 97 Cal.App.4th 493, 500-501, 118 Cal.Rptr.2d 511 ["A victim's restitution right is to be broadly and liberally construed"]; People v. Lyon (1996) 49 Cal.App.4th 1521, 1525, 57 Cal.Rptr.2d 415 ["statutory provisions *523 implementing the constitutional directive have been broadly and liberally construed"].) Specifically, this state's Supreme Court has stated that the term "victim" has a broad and flexible meaning. (People v. Ortiz (1997) 53 Cal.App.4th 791, 796-797, 62 Cal.Rptr.2d 66, citing People v. Crow (1993) 6 Cal.4th 952, 957, 26 Cal.Rptr.2d 1, 864 P.2d 80; see also People v. Broussard (1993) 5 Cal.4th 1067, 1075, 22 Cal.Rptr.2d 278, 856 P.2d 1134.)
The bank is a direct victim under section 1202.4 because: (a) the bank did not act as an indemnitor; (b) the bank was the object of the crime; and (c) appellant pleaded guilty to commercial burglary.

A. The bank did not act as an indemnitor
Appellant argues that the bank acted "in the guise of an indemnitor" when it reimbursed Dillon's account. He argues that Birkett, supra, 21 Cal.4th 226, 233, 87 Cal.Rptr.2d 205, 980 P.2d 912, which holds that an insurer who indemnifies a loss is not a direct victim, bars the bank's right to restitution. We disagree.
Entities other than individuals are entitled to restitution under section 1202.4. Subdivision (k)(2) specifies that "victim" includes "[a]ny corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity when that entity is a direct victim of a crime." For instance, restitution applies to associations designated as representatives to protect victims' interests. (See, e.g., People v. Ortiz, supra, 53 Cal.App.4th at p. 795, 62 Cal.Rptr.2d 66 [upholding a restitution order in favor of a trade association representing music labels whose tapes were counterfeited].)
Insurance companies that are victims of insurance fraud are also entitled to restitution. (See, e.g., People v. O'Casey (2001) 88 Cal.App.4th 967, 106 Cal.Rptr.2d 263 (O'Casey); People v. Moloy (2000) 84 Cal.App.4th 257, 100 Cal.Rptr.2d 676 (Moloy).) In O'Casey, an insurance company honored an employee's false workers' compensation claim. (O'Casey, at p. 969, 106 Cal.Rptr.2d 263.) The appellate court held that the insurer was a direct victim of the crime because the defendant's fraud induced the company to make payments directly to the defendant. (Id. at p. 971, 106 Cal.Rptr.2d 263.) In Moloy, supra, 84 Cal.App.4th 257, 100 Cal.Rptr.2d 676, the defendant fraudulently caused car accidents and submitted false claims to the victimized motorists' insurance companies. (Id. at pp. 258-259, 100 Cal.Rptr.2d 676.) Since Moloy's objective was to deceive insurance companies into settling false claims, the court permitted the companies restitution as direct victims. (Id. at pp. 260-261, 100 Cal.Rptr.2d 676).
Insurance companies that merely indemnify a direct victim of a crime, on the other hand, are not entitled to restitution. (See, e.g., Birkett, supra, 21 Cal.4th 226, 87 Cal.Rptr.2d 205, 980 P.2d 912; People v. Wardlow (1991) 227 Cal.App.3d 360, 278 Cal.Rptr. 1; People v. Blankenship (1989) 213 Cal.App.3d 992, 262 Cal.Rptr. 141; People v. Williams (1989) 207 Cal.App.3d 1520, 255 Cal.Rptr. 778.) In Birkett, the California Supreme Court considered the restitution claims of insurance carriers that had reimbursed victims of car theft. The court reasoned that the plain language and legislative history of section 1202.4 precluded insurance companies from obtaining restitution for indirect economic losses, such as policyholder reimbursement. (Birkett, at pp. 234, 242, 87 Cal.Rptr.2d 205, 980 P.2d 912.) The court concluded insurance companies in this context were left to recover their losses through separate civil remedies. (Id. at p. *524 246, 87 Cal.Rptr.2d 205, 980 P.2d 912.) Other courts have noted that similarly situated insurers are not direct victims because they have a contractual obligation to assume such risks in exchange for premiums. (People v. Williams, at pp. 1523-1524, 255 Cal.Rptr. 778; People v. Blankenship, at pp. 999-1000, 262 Cal.Rptr. 141.)
We are unaware of any California cases addressing the right to restitution of a bank under the circumstances before us. However, the reasoning of the Iowa Supreme Court in State v. Hennenfent (1992) 490 N.W.2d 299 (Hennenfent), is persuasive. After the defendant in Hennenfent pleaded guilty to forging her employer's and his wife's signatures on numerous checks, the trial court ordered her to pay restitution to the bank that had cashed the checks. (Ibid.) The Iowa restitution statute, which specifically excluded insurers, defined "victim" as one "who has suffered pecuniary damages as a result of the offender's criminal activities." (Ibid.) Hennenfent argued that the bank was an insurer and not entitled to restitution. (Ibid.) The Iowa Supreme Court disagreed, relying on definitions of "insurer" and "insurance" in Black's Law Dictionary.[4] (Hennenfent, at p. 300.) The court held that banks were not insurers because they did not insure against anticipated risks, receive compensation for assuming such risks, or contract to assume liability for damages arising out of criminal misconduct. (Ibid.)
Though we are not bound by an Iowa state court decision, Hennenfent is persuasive because both Iowa and California provide restitution to a victim who suffers economic loss as a result of an offender's crime. (See § 1202.4, subd. (a)(1); Iowa Code, § 910.1(5).) Both states also deny restitution to insurers who merely indemnify their policyholders. (See Birkett, supra, 21 Cal.4th at p. 233, 87 Cal.Rptr.2d 205, 980 P.2d 912; Iowa Code, § 910.1(5).) Furthermore, Hennenfent relied on definitions of "insurer" and "insurance" that are applicable to the case at bar. (Hennenfent, supra, 490 N.W.2d at p. 300.) As in Hennenfent, the bank in this case honored an offender's fraudulent transactions, which affected a deposit holder's account. The bank did not insure Dillon's account against the risk of appellant's crime, receive compensation for doing so, or contract to assume economic liability for appellant's crime. (Cf.ibid.)
Appellant relies upon the holding of Birkett, supra, 21 Cal.4th 226, 87 Cal.Rptr.2d 205, 980 P.2d 912, refusing to recognize an insurance company that indemnifies a loss as a direct victim entitled to restitution. However, for the reasons stated above, the bank is not an insurer, nor did it act "in the guise of an indemnitor" when it credited Dillon's account. Banks "are not in the business of insuring against unanticipated risks." (Hennenfent, supra, 490 N.W.2d at p. 300.) The FDIC, not the bank, acts as an insurer of bank accounts. Since the bank did not act as an indemnitor of Dillon's account, the Birkett rule does not apply.

B. The bank was the object of the crime
A victim is the object of a crime. (Birkett, supra, 21 Cal.4th at p. 232, 87 Cal. *525 Rptr.2d 205, 980 P.2d 912, citing People v. Crow, supra, 6 Cal.4th at p. 957, 26 Cal.Rptr.2d 1, 864 P.2d 80.) "`Actual'" or "`direct'" victims are "the real and immediate objects" of the offense. (Birkett, at p. 233, 87 Cal.Rptr.2d 205, 980 P.2d 912.) Thus, people or entities are entitled to restitution when the crime was committed against them. (Id. at p. 232, 87 Cal.Rptr.2d 205, 980 P.2d 912.) In O'Casey and Moloy, for instance, the insurance companies were direct victims because the purpose of the crime was to induce the insurers to settle fraudulent claims. (O'Casey, supra, 88 Cal.App.4th 967, 971, 106 Cal.Rptr.2d 263; Moloy, supra, 84 Cal.App.4th 257, 260, 100 Cal.Rptr.2d 676.) An insurance company that only reimburses its policyholder's crime-related loss, such as in Birkett, is not the immediate object of the crime. In such cases, the only involvement of the insurer is to indemnify its client. (O'Casey, at p. 971, 106 Cal.Rptr.2d 263.)
By contrast, the bank's involvement in the case at bar included more than simply reimbursing Dillon's account. Appellant committed his offense by entering the bank's premises at three different branches. Appellant's crime also involved deceiving the bank's employees and using Washington Mutual's bank account system. As in O'Casey and Moloy, appellant committed his crime against the entity claiming restitution. The object of appellant's crime was to enter the bank and make fraudulent withdrawals of funds managed by the bank. Thus, the object of appellant's crime was to commit fraud against the bank.

C. Appellant pleaded guilty to commercial burglary
The particular crime of which an offender is convicted also indicates who is the direct victim. (See O'Casey, supra, 88 Cal.App.4th at p. 972, 106 Cal.Rptr.2d 263). In O'Casey, the defendant was convicted of workers' compensation insurance fraud, which involves fraudulently obtaining payment from an insurer. (Ibid.) O'Casey was not convicted of seeking to fraudulently obtain her employer's property, which would have implied that the employer was the direct victim. (Ibid.) She was convicted of a crime against the workers' compensation insurance company. (Ibid.) Consequently, the insurance company itself was a direct victim entitled to restitution. (Id. at p. 973, 106 Cal.Rptr.2d 263.) Similarly here, appellant pleaded guilty to one count of commercial burglary in violation of section 459. Commercial burglary indicates that appellant committed the offense against a business entity rather than an individual. The complaint states that appellant, "enter[ed] a commercial building occupied by Washington Mutual with the intent to commit larceny and any felony." As respondent notes, appellant did not plead guilty to "grand theft" or "unauthorized use of personal identifying information or related crimes." A conviction under these crimes would indicate that the victim was Dillon, rather than the bank.
Consequently, appellant's conviction of commercial burglary also supports identification of the bank as a "direct victim."
Since the bank was a direct victim of appellant's offense, the court did not abuse its discretion in ordering appellant to pay restitution to the bank.

Disposition
The judgment is affirmed.
We concur: LAMBDEN and RUVOLO, JJ.
NOTES
[1] Unless otherwise stated, all statutory references are to the Penal Code.
[2] Because appellant pleaded guilty, much of the factual background is taken from the probation officer's presentence report and the accompanying supplemental documentation.
[3] The court stated: "I understand what was said about [the bank] being covered, I guess, by FDIC, and so maybe they don't need restitution, but by the same token, the folks who took the money should not get away either. And I'm not sure who is owing some money, but it seems to me that there may well be someone or some agency that legitimately is entitled to restitution. So I'm going to make a restitution order to be determined as to who that is, and that will give Probation some time to look into that. Maybe there will be none claimed, but to the extent that someone or some agency needs to be made whole, I'm sure Mr. Saint-Amans will do that."
[4] The 1990 edition of Black's Law Dictionary cited by the court defined "insurer" as "the underwriter or insurance company with whom a contract of insurance is made. The one who assumes risk or underwrites a policy, or the underwriter or company with whom a contract of insurance is made." (Black's Law Dict. (6th ed.1990) p. 808.) Black's Law Dictionary defined "insurance" as "a contract whereby, for a stipulated consideration, one party undertakes to compensate the other for loss on a specified subject by specified perils." (Id. at p. 802.)