IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 22, 2008

## STATE OF TENNESSEE v. CHRISTOPHER SHANE POOLE

**Appeal from the Circuit Court for Dickson County**
**No. CR8729      Robert E. Burch, Judge**

_____

**No. M2007-01041-CCA-R3-CD - Filed May 29, 2008**

_____

The Defendant, Christopher Shane Poole, pled guilty in the Dickson County Circuit Court to two counts of misdemeanor theft. Under the plea agreement, he received consecutive terms of eleven months and twenty-nine days, and his sentence was probated. Following a hearing, the trial court ordered the Defendant to pay restitution in the amount of $1400.00 to the bank where he made the fraudulent withdrawals of funds. On appeal, the Defendant argues that the bank is not a "victim" for the purposes of the restitution statute, Tennessee Code Annotated section 40-35-304. After a review of the record, we uphold the order of restitution to the bank. We remand for entry of corrected judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, J., joined. JAMES CURWOOD WITT, JR., J., filed a concurring opinion.

William B. Lockert, III, District Public Defender; Dawn Kavanagh, Assistant District Public Defender, for the appellant, Christopher Shane Poole.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Carey Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Factual Background

The September 2006 term of the Dickson County Grand Jury returned a ten-count indictment against the Defendant. He was charged with one count of theft of property over the value of $500.00 but less than $1000.00, a Class E felony; three counts of theft of property valued at $500.00 or less; Class A misdemeanors; three counts of forgery involving less than $1000.00, Class E felonies; and three counts of uttering forged instruments up to $1000.00, Class E felonies. See Tenn. Code Ann.

§§ 39-14-103, -105, -114. It appears from the record and the briefs of the parties[1] that the Defendant entered a nolo contendere plea on February 26, 2007, to two counts of theft of property valued at $500.00 or less and that all of the remaining charges were dismissed. Pursuant to the plea agreement, the Defendant received sentences of eleven months and twenty-nine days for both of these convictions to be served consecutively.[2] He was placed on probation. The trial court was to determine the amount of restitution.

Prior to the restitution hearing, the parties stipulated to the pertinent facts underlying the Defendant's crimes. The stipulation recites as follows:

> [The Defendant] received a small insurance settlement in May or June of 2006, a few weeks before the transactions at issue. He gave the $3000 settlement money to his mother, Vicki Gunning, to hold for him and help him manage his spending. Mrs. Gunning kept the money in an envelope in her bedroom, but led [the Defendant] to believe the money was in the bank. She told him he could ask her once a week for as much as he wanted. Whenever [the Defendant] asked his mom for some of his money, she told him she would go to the bank and get it for him. If he asked for it after banking hours, she told him he would have to wait until the bank opened. This arrangement worked until the Gunnings went out of town in June. When the Gunnings left town, [the Defendant] still had around $1500 in his envelope/"the bank". The following transactions took place while the Gunnings were of town:

> On June 22, 2006 [the Defendant] went into the First Federal in Charlotte and withdrew $600 from Mr. and Mrs. Gunning's money market account. He went up to the counter and asked the teller, Irene Schneck, for the money. According to Ms. Schneck's statement, she filled out a counter check, had him sign it and gave him the money. She never asked for identification because [the Defendant] had the account number on a card.

> On June 23rd [the Defendant] went into the White Bluff and Dickson-Highway 46 branches and withdrew a total of $500. These transactions were caught on tape and [the Defendant] is clearly identifiable. There are no statements from the tellers involved in these transactions.

> On June 24th [the Defendant] went back to the Dickson branch and withdrew $300. According to the teller, Mrs. Fielder, she did not ask for identification.

---

[1] Neither the plea agreement nor a transcript of the guilty plea hearing appear in the record on appeal.

[2] The judgement forms do not indicate consecutive sentences. Again, we must glean the consecutive nature of the Defendant's sentences from the information provided by the parties and statements made at the restitution hearing.

Because [the Defendant] had a carbon copy of a checking withdrawal, she let him withdraw from the money market account.

A hearing was held on April 17, 2007. At the outset, both parties agreed that the Gunnings had been reimbursed by First Federal Bank for their losses resulting from the Defendant's actions. Defense counsel then argued that the bank was not a victim for restitution purposes despite the fact that the bank had paid the Gunnings for their losses because the bank had "a fiduciary duty and an obligation to do so." Defense counsel further cited to the bank's negligence in accepting the forged instruments.

The trial court relied on State v. Donnie Lomax, No. M2003-01443-CCA-R3-CD, 2004 WL 1773437 (Tenn. Crim. App., Nashville, Aug. 4, 2004), and ordered restitution to First Federal Bank in the amount of $1400.00. The trial court reasoned as follows:

> Donnie Lomax . . . was essentially a floor plan situation where the extender of credit of the floor plan was alleged to be the victim and the same argument was made that they are essentially an insurer.
>
> However, the Court in this situation said that an insurer in the sense that an insurant [sic] assumes the risk in return for premiums paid by the defendant. In this case the bank didn't plan on assuming a risk.
>
> Obviously if a bank makes a mistake, they have to make it good, so does anybody else; but they are not assuming that this risk will happen, so I don't find that their liability is so contingent that they would not be a victim; and the [c]ourt finds that the bank was a victim as contemplated under [Tennessee Code Annotated section] 40-35-304.
>
> The fact that this is a no contest plea really is of no consequence[], it's a conviction. It's a theft; and the victim is the person who is out the money; and the only person who is out the money is the bank.

The trial court then heard testimony from the Defendant regarding his financial resources and his ability to pay restitution. At the conclusion of his testimony, the trial court determined that the Defendant could pay the $1400.00 in installments over the remainder of his probationary term.

This appeal followed.

**ANALYSIS**

On appeal, the Defendant contends that the trial court was without authority to order restitution to First Federal Bank, contending that the bank was not a "victim" within the meaning of Tennessee Code Annotated section 40-35-304. Specifically, he states, "The individuals who suffered a direct loss from the actions of the [Defendant] are the account holders whose money he

took without permission. The bank's loss is indirect, and stems from the nature of its relationship with the actual victims and from its own negligence." Furthermore, the Defendant argues that the bank is equivalent to an insurance company and, therefore, not entitled to collect under the restitution statute. The Defendant does not dispute the amount of restitution ($1400.00) ordered.

In Tennessee, a court exercising criminal jurisdiction has no "inherent power or authority to order payment of restitution except as is derived from legislative enactment." State v. Alford, 970 S.W.2d 944, 945 (Tenn. 1998). The statue that governs restitution as a condition of probation provides, in pertinent part, as follows:

> (b) Whenever the court believes that restitution may be proper or the victim of the offense or the district attorney general requests, the court shall order the presentence service officer to include in the presentence report documentation regarding the nature and amount of the victim's pecuniary loss.

> (c) The court shall specify at the time of the sentencing hearing the amount and time of payment or other restitution to the victim and may permit payment or performance in installments. The court may not establish a payment or performance schedule extending beyond the statutory maximum term of probation supervision that could have been imposed for the offense.

> (d) In determining the amount and method of payment or other restitution, the court shall consider the financial resources and future ability of the defendant to pay or perform.

> (e) For the purposes of this section, "pecuniary loss" means:

> (1) All special damages, but not general damages, as substantiated by evidence in the record or as agreed to by the defendant; and

> (2) Reasonable out-of-pocket expenses incurred by the victim resulting from the filing of charges or cooperating in the investigation and prosecution of the offense; provided, that payment of special prosecutors shall not be considered an out-of-pocket expense.

Tenn. Code Ann. § 40-35-304(b)-(e).

In Alford, the defendant committed an aggravated assault that resulted in physical injuries to the victim, and the victim's insurance carrier compensated him for his medical expenses. 970 S.W.2d at 945. Our supreme court dealt with "whether a hospitalization insurance carrier can be a 'victim' and thereby receive restitution from a defendant . . . ." Id. The court in Alford analyzed Tennessee Code Annotated section 40-35-304 and determined that insurance companies were not

-4-

included within the definition of a "victim" and, therefore, could not be awarded restitution as a condition of probation:

> [I]t is apparent that the word "victim" refers to the individual or individuals against whom the offense was actually committed. Nothing in the statute supports a broader application.
>
> Additionally, a victim's insurer is not within the natural and ordinary meaning of "victim." This is true because an insurer's payment of medical or other expenses is made pursuant to a contractual obligation . . . . Rather, an insurer contracts to accept the risk that claims will be made under the contract of insurance. Therefore, the guidance offered from the language of the statute is that the legislature did not intend "victim" to apply to insurers in this context.

Id. at 946. The court applied the rules of statutory construction and considered the legislative history of the statute in reaching its decision. Id. at 946-47.

In State v. Cross, 93 S.W.3d 891 (Tenn. Crim. App. 2002), this Court distinguished Alford and held that insurance companies that are the victims of insurance fraud are entitled to restitution. 93 S.W.3d at 895. The trial court in this case cited to Lomax, 2004 WL 1773437. In Lomax, the defendant accepted payments for five vehicles without making payment to the lien holders. 2004 WL 1773437, at *1. This Court held that if the company's "role was that of supplying financing for the defendant, it may have been victimized when its collateral was sold and the proceeds therefrom diverted by the defendant." Id. at *5. In so deciding, this Court noted as follows:

> We consider an entity as tantamount to an individual and do not consider the failure to include its mention in the indictment as an excuse for the defendant to escape his obligation to make restitution. We conclude that omission of the victimized entity from the indictment is not dispositive when the entity is clearly a victim of the subject criminal charge contained in the indictment.

Id. at *5.

We are unaware of any Tennessee cases addressing the right of restitution of a bank under the circumstances presented here. In our view, this case is different from the facts presented in Alford. We find the reasoning of State v. Hennenfent, 490 N.W.2d 299 (Iowa 1992), and People v. Saint-Amans, 32 Cal. Rptr. 3d 518 (Cal. Ct. App. 2005), persuasive. In Hennenfent, the Iowa Supreme Court held that banks that made good on forged checks of their depositors were victims, rather than insurers, and were entitled to restitution. 490 N.W.2d at 300. The court reasoned that banks were not insurers because they did not insure against anticipated risks, receive compensation for assuming such risks, or contract to assume liability for damage arising out of criminal misconduct. Id. In Saint-Amans, a bank that reimbursed its account holder for losses caused by the

defendant's fraudulent transaction was found to be a direct victim of the crime and entitled to restitution. 32 Cal. Rptr. 3d at 523-25.

In both Iowa and California, restitution is provided to a victim who suffers economic loss as a result of an offender's crime. Saint-Amans, 32 Cal. Rptr. 3d at 524. Similarly, both states deny restitution to insurers who merely indemnify their policyholders. Id. Here, as in Hennenfent and Saint-Amans, the bank honored an offender's fraudulent transaction which affected a depositor's account. See id. The bank was not an insurer in the present case; it did not insure the account against the risk of the Defendant's crime, receive compensation for doing so, or contract to assume economic liability for the Defendant's crime. See id.; see also Cross, 93 S.W.3d at 895-96.

We agree with the trial court and conclude that the bank is a "victim" of the Defendant's crime for restitution purposes. The Defendant committed these offenses by entering the bank premises and deceiving bank employees. See Saint-Amans, 32 Cal. Rptr. 3d at 525. The bank was specifically referenced in the indictment. The object of the Defendant's crime was to enter the bank and make fraudulent withdrawals from funds managed by the bank. See id. The bank did not accept this risk of fraud. See Cross, 93 S.W.3d at 895-96.

Finally, the Defendant asks us to take into account the bank's negligence in failing to obtain identification from him, in essence, requesting that we adopt a "comparative fault" doctrine in determining restitution. This Court has previously declined to adopt a "comparative fault" doctrine based upon the victim's alleged conduct, concluding that such conduct has no relevance to the amount of the pecuniary loss. State v. Kenneth Pence, No. W2003-00639-CCA-R3-CD, 2003 WL 22922277, at *2 (Tenn. Crim. App., Jackson, Dec. 10, 2003). Restitution is authorized pursuant to Tennessee Code Annotated section 40-35-304.

## CONCLUSION

The trial court did not err in ordering the Defendant to pay restitution to the bank. Accordingly, the judgment of the trial court is affirmed. It appears from the record that the Defendant's sentences were to be served consecutively, although the judgments do not so provide. Accordingly, we remand this case to the trial court for the sole purpose of entering corrected judgments.

_____
DAVID H. WELLES, JUDGE