Filed 12/17/21  P. v. Weece CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOHN EDWARD WEECE,<br><br>Defendant and Appellant. | F081703<br><br>(Super. Ct. No. VCF353288)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Darren K. Indermill, Amanda D. Cary, and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Before Franson, Acting P. J., Peña, J. and Snauffer, J.

# INTRODUCTION

Defendant John Edward Weece previously appealed his convictions of sexual abuse of three female minors, including 41 convictions for abuse of the youngest victim, Doe 3, two convictions for committing lewd acts upon a child, Doe 2, and one conviction for using a minor, Doe 1, for sexual acts. (Pen. Code, §§ 288, 288.7, 311.4. Further undesignated statutory references are to the Penal Code.) We previously affirmed his convictions.

He now appeals the court's restitution order, arguing the court erred in awarding Doe 1 noneconomic damages because she was not the victim of a section 288, 288.5, or 288.7 offense, and the court abused its discretion in awarding Doe 2 $100,000 in noneconomic damages.

We affirm the restitution order.

# FACTUAL BACKGROUND

Defendant was charged with 53 counts of sexual abuse of three female minors, Doe 1, Doe 2, and Doe 3.

At trial, Doe 2 testified defendant had touched and squeezed her breasts and put his hands down her pants and touched her vagina more than five times. She testified he touched her for the first time when she was nine years old. She recounted an incident during which she went to the shop behind defendant's house with him and her sister, Doe 1. Doe 2 took off her clothes and sat down on an orange lift at defendant's direction. Defendant then handed her a vibrator and had her put it in her vagina. He handed Doe 1 his phone and told her to take pictures of Doe 2 putting the vibrator in her vagina. Doe 2 also testified regarding other incidents when defendant would touch her thigh. She alleged defendant touched her vagina while masturbating and that he had sex with her.

A jury convicted defendant of 41 counts of abuse committed against the youngest victim, Doe 3, two counts of committing a lewd act upon a child related to Doe 2 (§ 288, subd. (a)), and one count of using a minor, Doe 1, for sexual acts (§ 311.4, subd. (c)).

One of defendant's section 288, subdivision (a) convictions for committing a lewd act upon a child arose from the incident during which he had Doe 2 use a vibrator on herself while her sister, Doe 1, took pictures at his direction. Defendant's conviction for using a minor for sex acts in violation of section 311.4 also arose from that incident. Defendant's other section 288, subdivision (a) conviction against Doe 2 related to his touching of Doe 2's thigh. The jury acquitted defendant of nine counts that related to certain other acts alleged to have been committed against Doe 2.

The probation report included victim impact statements from Doe 1, Doe 2, their mother, defendant's former wife, and two of her sisters.[1] A statement attributed to Doe 2 states,

> "I want you to realize what you did to me, you put me in the dark. I was depressed, suicidal, I would even cut myself because that was the only way to slightly take the pain away but it just wasn't enough. I was never able to take away the pain you have caused because you burned a hole so deep into my soul that anything I ever did could never seal that hole shut. I went to therapy thinking that it would help me but it didn't.… [¶] … [¶] [Y]ou destroyed my life and my innocence. [¶] Because of you I have a hard time trusting people in my life, I am afraid of loving again because of you."[2]

The victims' great aunt reported the three minor victims' "outlook on life has dramatically changed. One child felt the need to move across the country to feel safe …."

Following the trial, the People filed a motion "seeking an order for restitution to include noneconomic damages for the psychological harm suffered" by the three victims. They argued restitution is mandatory to direct victims for psychological harm resulting

---

[1] Per defendant's request, and without objection by the People, we took judicial notice of the appellate record from defendant's direct appeal, *People v. Weece* (Dec. 17, 2020, F077362) (nonpub. opn.).

[2] Defendant does not challenge the consideration of the victim impact statements on appeal. He acknowledges two of the unsigned letters "appear to be from [Doe 2] and [Doe 1]" and allege "they had suffered irreparable psychological damage."

from defendant's violations of section 288 for engaging in lewd and lascivious acts upon a child. The People requested $250,000 for each victim "[g]iven the extent of psychological harm described by each child."

Defendant opposed the motion, arguing there was "no reliable evidence that the children suffered nightmares or flashbacks, that they were having trouble in school or problems making friends." Alternatively, he asked the court to award "a reduced amount aligning more accurately to the facts of the instant case." Citing *People v. Valenti* (2016) 243 Cal.App.4th 1140, defendant argued the trial court must demonstrate a rational basis for its restitution award and explain and cite reliable evidence it relied upon to arrive at the amount of restitution awarded to each victim. He also challenged the evidence in support of his convictions arguing, in part, the evidence presented at trial undermined the complainants' credibility. Additionally, he argued there were no facts or reliable evidence relating to the complaining witnesses' actions or behaviors to support restitution. He noted Doe 3 did not draft an impact statement and there was no way to authenticate who drafted the other statements because they were unsigned. Accordingly, he argued the impact statements attributed to Doe 1 and Doe 2 should be disregarded; thus, there were no impact statements prepared by any of the victims. He argued the testimony of the victims was "questionable on its face" and "does not reflect current pain and suffering." Accordingly, the court should deny the People's request for restitution or "limit the imposed restitution to a minimum."

The court held a restitution hearing during which Doe 1 and Doe 2's mother (Ms. D.), and Doe 3's mother (Ms. M.) all testified. Doe 3, who was 12 at the time of the restitution hearing, was also present. The prosecutor notified the court Doe 3 was "hesitant to come into the courtroom and talk, but if necessary … [the prosecutor thought] she would be able to do so."

Doe 1, who was 21 at the time of the restitution hearing, recounted the incident giving rise to two of defendant's convictions, one for a violation of section 288 (lewd and

4.

lascivious acts against a child) and the other for a violation of section 311.4, subdivision (c) (using a minor for sex acts). When Doe 1 was nine years old defendant made her and her sister, Doe 2, "go into the shop in the very back and he made [Doe 2] pull down her underwear and her shorts, and he gave [Doe 1] his phone and he made [her] take pictures of [Doe 2] while she was using a vibrator on herself." Doe 1 felt "[d]isgusted and sad" after the incident. She continued to feel disgusted almost every day after from the time she was nine until the present. She still gets anxious. She would try not to think about it but it would come to her mind at least two or three times a month. She would get scared and stop eating for a few days. She did not tell anyone about the incident until she was 15 or 16 when she told her mother. Since then she tried to attend therapy with three different counselors, but she did not feel like she was getting feedback or help. Doe 1 testified what she went through when she was nine changed her life "dramatically." She gets "anxious" and starts to panic when she sees older people at her fast food job. She does not "know how to cope with it."

Doe 1 and Doe 2's mother, Ms. D., testified Doe 2 was stone-faced or walled-off when Ms. D. initially tried to talk to her about the abuse. Ms. D. explained there are things that "have been brought up that cause[] [Doe 1 and Doe 2] to go in[to] rages, anger. They break down. They cry. There's times where [*sic*] they don't eat." She explained certain things like songs and items "trigger" Doe 1 and Doe 2. Doe 2 moved to the east coast recently. She had "been through a few therapists." But one of the therapists made her "feel like it was her fault," so Doe 2 backed away from therapy. Doe 2 then "went into a deep depression again. She came back home for a while." She then moved back east. "[W]hen COVID hit, [Doe 2] started to seek therapy again, but she hasn't been able to because of all this." Ms. D. reported that both Doe 1 and Doe 2 have reported they do not "want to live." Even after defendant was gone, Doe 2 and Doe 1 have nightmares. Doe 2 would text Ms. D. that she "can't do this anymore."

5.

Ms. M. testified she started Doe 3 in therapy when Doe 3 was six years old because Ms. M. noticed a change in Doe 3's attitude. Doe 3 was "irritable" and "[t]hings would agitate her, like, even putting clothing on, her socks, her underwear, combing her hair"; she had "aggression." Ms. M. did not think it was normal so she sought professional help for Doe 3. Doe 3 went to therapy inconsistently for two years, between the ages of six and eight and then stopped going for a while because "she kind of hit a stump" according to the therapist. Doe 3 disclosed the sexual abuse by defendant when she was eight years old after her cousin Doe 2 reported abuse. Doe 3 did not tell her whole side of the story until she started going to therapy again; details came out over a six-month period. Doe 3 "had to learn to trust her therapist and talk about these things. She had a lot of rage, a lot of anger. She would lash out. [They] saw fire in her eyes." According to Ms. M., Doe 3 continues to go to therapy. Until the pandemic, Doe 3 would go to therapy every week; she was in individual counseling, group counseling, and a mother/daughter group. She stopped when the pandemic hit, but she and Ms. M. communicate through text message with Doe 3's therapist and they have a support group. Ms. M. explained, since the trial, Doe 3 "struggle[s] with relationships, friendships, relationships with her siblings." According to Ms. M., Doe 3 "currently has no friends, besides one." Doe 3 told Ms. M. "she feels lonely" but does not know why, and she feels like she is "controlling and bossy and that pushes people away." They had an issue the previous year with Doe 3 "overly sharing," "[t]alking about sex," "sending inappropriate photos." Doe 3 "felt like she needed to do that to keep [the boy] a part of her life and to prove to him that she loved him." Doe 3 reacts negatively to certain songs and smells and can "have a really rough day and cry and why me [*sic*]."

During the restitution hearing, the prosecutor asked the court to rely on Ms. M.'s testimony regarding Doe 3, rather than to have Doe 3 come into court. The court stated it was "fine with that." The court then granted defense counsel 14 days to submit any additional filings to the court. The defense did not file anything additional.

6.

The court ultimately ordered defendant to pay restitution in the total amount of $301,193.18 allocated as follows: $50,000 to Doe 1, $100,000 to Doe 2, $150,000 to Doe 3, and $1,193.18 to the California Victim's Compensation Board. The court explained the awards were "for purposes of counseling and any help they need in order to get over this. It was, obviously, very devastating." The defense objected to the court's imposition of restitution.

## DISCUSSION

In this appeal, defendant does not challenge the noneconomic damages awarded to Doe 3 during the restitution hearing. Rather, his challenges focus on the awards to Doe 1 and Doe 2.

## I.    Doe 1 was eligible for noneconomic damages

Defendant first argues Doe 1 was not the victim of a section 288 offense, so she was not entitled to noneconomic damages. We disagree.

### A.    Standard of Review

The California Constitution gives trial courts broad power to impose restitution on offenders. (Cal. Const., art. I, § 28, subd. (b)(13).) "All persons who suffer losses" due to crime have the right to restitution. (*Ibid.*) Accordingly, courts have held restitution statutes should be interpreted broadly and liberally. (*In re S.E.* (2020) 46 Cal.App.5th 795, 808; *In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132; accord, *People v. Mearns* (2002) 97 Cal.App.4th 493, 500–501 ["A victim's restitution right is to be broadly and liberally construed"]; *People v. Lyon* (1996) 49 Cal.App.4th 1521, 1525 ["statutory provisions implementing the constitutional directive have been broadly and liberally construed"].) "[A]ny interpretation that limits a victim's right to restitution would be contrary to the expressed intent and purpose of article I, section 28 of the California Constitution." (*In re S.E.*, *supra*, at p. 808.)

We review an order of victim restitution for abuse of discretion, unless the argument "hinges on an issue of statutory interpretation, which we review de novo." (*People v. Montiel* (2019) 35 Cal.App.5th 312, 318 (*Montiel*); accord, *People v. Saint-Amans* (2005) 131 Cal.App.4th 1076, 1084.)

## B.     Applicable Law

While generally, victim restitution is limited to "economic loss," there is an exception for restitution orders "relating to felony convictions for lewd or lascivious acts" (§§ 288, 288.5, 288.7). (*People v. Giordano* (2007) 42 Cal.4th 644, 656; accord, § 1202.4, subds. (a), (f).) For such convictions, the restitution order may provide for noneconomic damages, including, but not limited to, psychological harm. (§ 1202.4, subd. (f)(3)(F); accord, *Giordano*, at p. 656.)

Specifically, with exceptions not applicable here, section 1202.4, subdivision (f) provides in part:

> "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court…. [¶] … [¶] (3) To the extent possible, the restitution order shall be … of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] … [¶] (F) Noneconomic losses, including, but not limited to, psychological harm, for felony violations of Section 288, 288.5, or 288.7."

Section 1202.4, subdivision (k) states, in part, the term "victim" for purposes of the section includes the following: "[t]he immediate surviving family of the actual victim" and, a person who has sustained economic loss as the result of a crime and, "at the time of the crime was the parent, grandparent, sibling, spouse, child, or grandchild of the victim." (§ 1202.4, subd. (k)(1), (3)(A).) The statute makes no distinction between a "derivative victim" and an "actual victim." (*People v. Giordano*, *supra*, 42 Cal.4th at p. 656.)

8.

## C.    Analysis

Defendant first argues Doe 1 was ineligible for recovery of noneconomic damages because she was not a victim of a section 288, 288.5, of 288.7 offense.  Rather, he contends, "[t]he single count of conviction alleged and proven as to [Doe 1] was a violation of … section 311.4, subdivision (c), using a minor for sex acts."  Accordingly, defendant asserts the court's order for $50,000 in direct victim restitution for noneconomic losses to Doe 1 "is void because the court had no authority to enter it."  The People respond Doe 1 suffered emotional damages as a result of the section 288 offense defendant committed against her sister, Doe 2.  Thus, she should be entitled to noneconomic damages.  They rely on *Montiel*, *supra*, 35 Cal.App.5th 312 in support of their argument.  Defendant responds *Montiel* was wrongly decided and its holding is not supported by the plain language of section 1202.4.  We cannot conclude the court erred in awarding Doe 1 restitution for her noneconomic loss.

The plain language of section 1202.4, subdivision (f)(3)(F) includes noneconomic loss "for felony violations of Section 288, 288.5, or 288.7" as a category of "economic loss" to be included in a restitution order for victims of a defendant's criminal conduct.[3] (See *id.* ["the restitution order shall … fully reimburse the victim or victims for every … economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to …:  [¶] … [¶] (F) Noneconomic losses … for felony violations of Section 288, 288.5, or 288.7"].)

And here, the record establishes Doe 1 was a "victim" of defendant's criminal conduct in this case—that is, she was the object of defendant's criminal conduct.  (See *People v. Birkett* (1999) 21 Cal.4th 226, 232 ["in the context of the restitution statutes, '[a] "victim" is a "person who is the *object* of a crime…."'"].)  Indeed, the jury convicted defendant of acting criminally against Doe 1 in violation of section 311.4 by directing her

---

[3]Notably, section 1202.4, subdivision (f)(3) expressly provides that reimbursable economic loss "includes" but is "not limited to" the categories listed in that section.  (See *ibid.*)

to photograph her sister, Doe 2, using a vibrator on herself at defendant's direction (a lewd and lascivious act in violation of § 288). In this appeal, however, the parties dispute whether Doe 1 is considered a "victim" of defendant's felony violations of section 288. But we need not decide the answer to that question because section 1202.4 does not limit recovery of noneconomic damages to "direct victims of felony violations of section 288, 288.5, and 288.7." (See *People v. Runyan* (2012) 54 Cal.4th 849, 856–857 ["it is established that a statute 'permitting restitution to entities that are "direct" victims of crime [limits] restitution to "entities *against which* the [defendant's] crimes had been committed"—that is, entities that are the "immediate objects of the [defendant's] offenses." [Citation.]'"].) Rather, it provides for such restitution to the victim or victims of defendant's criminal conduct, which includes Doe 1.

Put differently, as a victim of defendant's criminal conduct in this case, under the plain language of section 1202.4, subdivision (f), Doe 1 is entitled to restitution to fully reimburse her for her "economic loss incurred" as a result of defendant's conduct, including her "[n]oneconomic losses" for defendant's felony violations of Section 288. And it is impossible to divorce Doe 1's "noneconomic losses," including her psychological harm, from defendant's felony violation of section 288, specifically, his act of directing Doe 2 to use a vibrator on herself while Doe 1 photographed her. Accordingly, as a victim of defendant's criminal conduct who suffered loss related to defendant's felony conviction for engaging in lewd or lascivious acts pursuant to section 288, Doe 1 was entitled to restitution for her noneconomic damages, including her psychological harm. (See *People v. Giordano*, *supra*, 42 Cal.4th at p. 656 [noneconomic damages may be included in a direct restitution order "relating to felony convictions for lewd or lascivious acts"].)

This conclusion comports with article I, section 28, subdivision (b)(13) of the California Constitution, which provides that "[i]n order to preserve and protect a victim's rights to justice and due process, a victim shall be entitled … [¶] … [¶] … [t]o restitution.

[¶] (A) It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer. [¶] (B) Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss." The Victims' Bill of Rights Act of 2008: Marsy's Law amended section 28 to define a "victim" as "a person who suffers direct or threatened physical, psychological, or financial harm as a result of the commission or attempted commission of a crime or delinquent act. The term 'victim' also includes the person's spouse, parents, children, siblings, or guardian, and includes a lawful representative of a crime victim who is deceased, a minor, or physically or psychologically incapacitated." (*Id.*, § 28, subd. (e).) Thus, Doe 1 also falls squarely within the definition of "victim" under this provision.

In *Montiel*, the First District Court of Appeal examined section 1202.4 and concluded the mother of a minor against whom a defendant committed a section 288 offense was entitled to noneconomic damages as a result of the crime. (*Montiel*, *supra*, 35 Cal.App.5th at pp. 320–323.) The *Montiel* court held the mother was a victim under section 1202.4, subdivision (k)(3), reasoning section 1202.4, subdivision (k) "does not limit recovery to actual or direct victims, and it makes clear that parents of children who are sexually abused may be victims in their own right for purposes of being eligible for restitution." (*Montiel*, at p. 320.) The court noted, to the extent section 1202.4, subdivision (k)(3) is ambiguous as to whether a mother is eligible for restitution for her noneconomic losses, "the meaning of 'victim' must be considered in light of [California Constitution, article I,] section 28's creation of a broad constitutional right to restitution." (*Montiel*, at p. 322.) Accordingly, "[i]nterpreting section 1202.4 to authorize compensation for her noneconomic losses better comports with the constitutional right to restitution as expanded under Marsy's Law," which amended California Constitution, article I, section 28 to define a "victim" as "a person who suffers direct or threatened

physical, psychological, or financial harm as a result of the commission or attempted commission of a crime or delinquent act," including a person's parents and siblings. (*Ibid*.) The *Montiel* court also concluded the mother was a victim under section 1202.4, subdivision (k)(4) as a person who is eligible to receive assistance from the Restitution Fund pursuant to chapter 5 (commencing with section 13950) of part 4 of division 3 of title 2 of the Government Code. (*Montiel*, at p. 324.) The *Montiel* dissent countered, "[T]he majority has effectively rewritten the statute and excised both the explicit 'noneconomic loss' language out of … section 1202.4 subdivision (f)(3)(F) and the explicit 'economic loss' language out of the statutory definition of 'victim' in subdivision (k)(3), and in doing so, has disregarded the Legislature's intent both in authorizing restitution for noneconomic losses in felony child molestation cases and in expanding the statutory definition of 'victim' to include numerous persons, including parents, who have sustained economic loss." (*Montiel*, at p. 331 (dis. opn. of Banke, J.).)

We need not opine on the soundness of the reasoning of *Montiel* because the circumstances of this case are distinguishable. In *Montiel*, the court disputed whether the "mother," who was not the direct victim or object of any of defendant's criminal conduct, could still be considered a "victim" of defendant's criminal conduct under the circumstances of that case. To the contrary, here, Doe 1 is undoubtedly a "victim" of defendant's criminal conduct—she was the object of the section 311.4 offense of which defendant was convicted. Thus, Doe 1 is entitled to restitution for her "economic losses," including the "noneconomic losses" she suffered related to defendant's violations of section 288. Accordingly, the court did not err in awarding her such restitution under the plain language of the statute.

We reject defendant's first contention.

12.

**II.     The court did not abuse its discretion in setting the amount of noneconomic damages to Doe 2.**

Defendant next contends there was no rational basis for the $100,000 in direct victim restitution ordered to Doe 2.  We cannot conclude the court abused its discretion.

**A.     Standard of review and applicable law**

We review the amount ordered for restitution using the abuse of discretion standard.  (*People v. Giordano*, *supra*, 42 Cal.4th at p. 663.)  It asks whether the ruling "'"falls outside the bounds of reason" under the applicable law and the relevant facts.'" (*Ibid*.)  Discussing restitution for economic loss, the *Giordano* court noted, "[u]nder this standard, while a trial court has broad discretion to choose a method for calculating the amount of restitution, it must employ a method that is rationally designed to determine the surviving victim's *economic loss*.  To facilitate appellate review of the trial court's restitution order, the trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make a clear statement of the calculation method used and how that method justifies the amount ordered." (*Id*. at pp. 663–664, italics added.)

Noneconomic damages are "'subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation.' [Citation.]" (*People v. Smith* (2011) 198 Cal.App.4th 415, 431 (*Smith*).)  "Unlike restitution for economic loss, … loss for noneconomic [harm] is subjectively quantified." (*Id*. at p. 436.)  In light of the difference between the two types of loss, *Smith* held a different standard of review must be applied to orders of noneconomic restitution to allow for the subjective considerations of the trial court judge.  (*Ibid*.)  The *Smith* court held, "[w]e are guided in this matter by the civil jury instruction concerning noneconomic loss:  'No fixed standard exists for deciding the amount of these damages.  You must use your judgment to decide a reasonable amount based on the evidence and your common

sense.' [Citation.]" (*Ibid.*) "'As a result, all presumptions are in favor of the decision of the trial court.'" (*Ibid.*) "We therefore affirm a restitution order for noneconomic damages that does not, at first blush, shock the conscience or suggest passion, prejudice or corruption on the part of the trial court." (*Ibid.*)

### B.   Analysis

Defendant asserts substantial evidence does not support the trial court's order of $100,000 in direct victim restitution to Doe 2.  He argues Doe 2 did not testify at the restitution hearing; rather, the evidence of her noneconomic damages was based upon "the conclusory claims of her mother."  He contends there was no rational basis to award Doe 2, the victim of two lewd acts, nearly as much as Doe 3, the victim of 41 lewd acts. The People respond the trial court did not abuse its discretion in ordering $100,000 in victim restitution to Doe 2 in light of the evidence introduced at the restitution hearing regarding the harm she has suffered.  They assert the award should be affirmed if it does not, at first blush, shock the conscience or suggest passion, prejudice, or corruption on the part of the trial court.  They further contend defendant failed to challenge the foundation for Doe 2's mother's testimony at the hearing and he cannot raise a belated objection now.  In his reply brief, defendant asserts Doe 2 avoided cross-examination by failing to testify at the restitution hearing.  And, citing *People v. Valenti*, *supra*, 243 Cal.App.4th at pages 1182–1184, he argues evidence of Doe 2's damages "filtered through parents and the probation report or contained in statements made at sentencing is insufficient to sustain an award of noneconomic damages."  We cannot conclude the trial court abused its discretion in setting the amount of noneconomic damages to Doe 2 in its restitution order.

First, we agree with the *Smith* court—like the calculation of noneconomic damages in civil cases, and unlike the calculation of economic losses in direct restitution hearings, noneconomic damage are not readily quantified and require subjective

14.

considerations. (*Smith*, *supra*, 198 Cal.App.4th at p. 436; accord, *People v. Lehman* (2016) 247 Cal.App.4th 795, 801 (*Lehman*); see Civ. Code, § 1431.2, subd. (b)(2); CACI No. 3905A (2009 ed.).) Accordingly, in reviewing an award of noneconomic damages in a restitution order, a standard similar to that employed when reviewing jury verdicts awarding noneconomic damages, under which no abuse of discretion will be found where the amount does not "shock the conscience" or demonstrate passion, prejudice, or corruption, should apply. (See *Smith*, at p. 436; *Lehman*, at pp. 801, 803.)

And here, we cannot conclude the trial court abused its discretion in setting the amount of noneconomic loss by Doe 2. In her impact statement, Doe 2 reported she was "depressed and suicidal" as a result of defendant's abuse; she began cutting herself to take the pain away and went to therapy. She felt empty and like she did not want to live. At the restitution hearing, Doe 2's mother testified regarding the effects of defendant's abuse on Doe 2. Doe 2 moved across the country. She told her mother she did not want to live. She stopped eating at times, and had nightmares due to defendant's abuse. According to her mother, Doe 2 sought therapy, but discontinued for a period of time when it made her feel the abuse was her fault. Doe 2 then fell into a "deep depression." Doe 2 sought therapy again later but could not receive it in light of the pandemic. Such evidence supports the trial court's conclusion Doe 2 suffered significant noneconomic damages as a result of defendant's offensive lewd conduct.

*People v. Valenti*, *supra*, 243 Cal.App.4th 1140, cited by defendant, does not persuade us otherwise. In *Valenti*, the Second District Court of Appeal, Division Three, reversed awards of $50,000 in noneconomic damages to three victims. (*Id.* at p. 1182.) The court noted the record contained "no victim declarations independent documentation, or professional evaluations" in support of the court's award of $50,000 of noneconomic damages. (*Ibid.*) There, the People's sentencing memorandum cited to *Smith* and listed the requested sums but the People "did not submit any support for the figures." (*Ibid.*) The only information about the victims was "filtered through their parents and conveyed

15.

in the probation report or in a statement at sentencing" and did not support the court's award. (*Ibid.*) The mother of one victim reported to probation the victim "'did not sustain actual child abuse'" and "had not expressed his true feelings or discussed them with his mother." (*Ibid.*) The mother of a second victim reported the victim was "doing fine" and the mother had "'not noticed any emotional scars.'" (*Ibid.*) At the sentencing hearing, the third victim's mother reported the victim was "excellent." (*Id.* at p. 1183.) Based on the record in that case, the *Valenti* court concluded "the court's only apparent basis for awarding $50,000 [to each of the three victims] was the Third District's opinion, *Smith*." (*Ibid.*) The *Valenti* court concluded the trial court "did not find facts, cite reliable evidence, or even explain how it arrived at the amount of restitution awarded to each victim. There was no evidence, either through direct testimony or victim-impact statements, that the children suffered nightmares or flashbacks, that they were having trouble in school or problems making friends, that they had considered harming themselves or others, or that they had sought or received counseling in any form." (*Ibid.*) Rather, the "three families were relieved that their sons had not 'actually' been abused." (*Ibid.*) The *Valenti* court held, "[b]ecause the court did not 'demonstrate a rational basis for its award' or 'ensure that the record is sufficient to permit meaningful review,'" it reversed the award of noneconomic damages to those three victims and remanded for directions for the trial court to hold a restitution hearing. (*Id.* at pp. 1183–1184, citing *People v. Giordano*, *supra*, 42 Cal.4th at p. 664.)

Here, in contrast, there was evidence from the testimony at the restitution hearing and the victim impact statements of the harm Doe 2 suffered as a result of defendant's abuse. There was no evidence, like in *Valenti*, that Doe 2 or her family believed she had not "'actually' been sexually abused" or that she was "'doing fine.'" To the contrary, the jury convicted defendant of committing lewd and lascivious acts against Doe 2, and she and her family members reported defendant's crimes had caused her lasting damage, including depression, nightmares, self-harm, and suicidal feelings and that she had sought

16.

counseling as a result. Such evidence provided support for the court's award of noneconomic damages to Doe 2. Thus, *Valenti* is inapposite.

Additionally, though Doe 2 did not testify at the restitution hearing, "section 1202.4 does not require any particular kind of proof to establish a victim's losses." (*Lehman*, *supra*, 247 Cal.App.4th at p. 803; accord, *People v. Weatherton* (2015) 238 Cal.App.4th 676, 684.) Thus, the lack of direct testimony by Doe 2 at the restitution hearing did not bar her from receiving noneconomic damages. (See *Lehman*, *supra*, at p. 803 ["Contrary to defendant's arguments, the prosecution was not required to present victim testimony or affidavits or expert declarations in connection with the restitution hearing"].) For the same reason, defendant's contention Doe 2 "needed expert testimony … to establish noneconomic damages" is without merit. (See *id*.at p. 805.)

Furthermore, while defendant now challenges the foundation for Doe 2's mother's testimony at the restitution hearing, he did not raise this objection below and, thus, has forfeited his objection on that basis. (See Evid. Code, § 353 [no reversal due to erroneous admission of evidence unless "[t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion"].) And to the extent defendant is challenging the credibility of the witnesses and their statements, we do not reweigh the evidence or determine the credibility of a witness. (See *People v. Maury* (2003) 30 Cal.4th 342, 403 ["it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends"]; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 ["'we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder'"].)

Accordingly, the record reflects the trial court had before it evidence of the long-term, psychological impact of defendant's molest on Doe 2. Based upon such evidence, we cannot conclude the trial court abused its discretion in ordering defendant to pay to

17.

Doe 2 $100,000 in noneconomic damages based upon the applicable law and the relevant facts. In so holding, we note "there is no fixed standard for calculating noneconomic losses." (*Lehman*, *supra*, 247 Cal.App.4th at p. 805.) And we cannot conclude the award of noneconomic damages to Doe 2 "falls outside the bounds of reason" such that it "shock[s] the conscience or suggest[s] passion, prejudice or corruption on the part of the trial court" in light of the evidence of Doe 2's long-term psychological harm. (See *Smith*, *supra*, 198 Cal.App.4th at p. 432 [no abuse of discretion awarding sexual assault victim $750,000 in noneconomic damages where she suffered years of abuse by defendant, spent years in therapy, still had nightmares and flashbacks, attempted suicide twice, and could not keep a job]; *Lehman*, *supra*, at pp. 802–804 [concluding award of $100,000 in noneconomic damages to victim who suffered early stages of defendant's grooming behavior was not abuse of discretion where there was evidence victim was "emotional" and had "started counseling," though she did not submit a declaration or testify at restitution hearing].)

We reject defendant's second contention.

### DISPOSITION

The judgment is affirmed.