IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 19, 2023 at Knoxville

## STATE OF TENNESSEE v. JENNIFER MAY MAHAFFEY

**Appeal from the Circuit Court for Henderson County**
**Nos. 20-027-2, 20-028-2, 20-029-2    Donald H. Allen, Judge**

_____

### No. W2022-01778-CCA-R3-CD

_____

Defendant, Jennifer May Mahaffey, pled guilty to alternate counts of sale of methamphetamine "over 0.5 grams" and delivery of methamphetamine "over 0.5 grams"[1] in three cases, 20-027-2, 20-028-2, and 20-029-2. The trial court sentenced Defendant to ten years imprisonment on each count, merged the alternate counts in each case, and ran the ten-year sentences in two of the cases concurrently with each other, and the ten-year sentence in the third case consecutively to the first two, for a total effective sentence of twenty years confinement. The trial court also imposed fines totaling $6,100, and ordered restitution in the amount of $563. On appeal, Defendant contends the trial court erred in ordering restitution to the Henderson County Sheriff's Department, in imposing fines and restitution without determining her present and future ability to pay, and in imposing partial consecutive sentences. After reviewing the record, the briefs of the parties, and the applicable law, we discern no reversible error in the trial court's imposition of partial consecutive sentences, but we determine the order of restitution was in error. Therefore, we affirm the sentences imposed by the trial court, vacate the orders of restitution, and remand for entry of corrected judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part and Vacated and Remanded in Part.**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and TOM GREENHOLTZ, JJ., joined.

Kendall Stivers Jones, Assistant Public Defender – Appellate Division, Franklin, Tennessee (on appeal); Michael Thorne (at trial) for the appellant, Jennifer May Mahaffey.

---

[1] Tennessee Code Annotated section 39-17-417(c)(1) provides that the sale or delivery of methamphetamine is a Class B felony if the amount involved is "0.5 grams or more." The indictment in these cases charged Defendant with the sale of "over 0.5 grams." The amount of the methamphetamine is not an issue on appeal.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Jody Pickens, District Attorney General; and Angela R. Scott, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Facts and Procedural History

This case stemmed from three controlled drug buys conducted by the Henderson County Sheriff's Department ("HCSD") on October 7, October 9, and October 28, 2019. On January 31, 2020, the Henderson County Grand Jury returned three, two-count indictments in cases 20-027-2, 20-028-2, and 20-029-2 against Defendant, Jennifer May Mahaffey, charging her in each case with one count of sale of methamphetamine over 0.5 grams in a drug-free school zone and one count of delivery of methamphetamine over 0.5 grams in a drug-free school zone. While Defendant was on bond in the three cases, she was arrested for driving on a suspended license and was subsequently charged in a fourth indictment, 20-092-2, with driving on a suspended or revoked license, a Class B misdemeanor.[2]

*Plea Submission Hearing*

On August 24, 2021, the week of trial, Defendant announced her desire to enter an "open plea" to all of the indictments as charged except that the drug-free zone enhancements were dropped, making the drug charges Class B felonies. At the plea colloquy, the trial court reviewed the range of punishment and the range of fines for each of the offenses. The State indicated that had the cases gone to trial, it would have proceeded on the offenses with the drug-free zone enhancement which would have enhanced the crimes to Class A felonies and increased the fines. The State agreed that Defendant would be sentenced as a Range I standard offender and that the drug offenses would be reduced to Class B felonies without the drug-free zone enhancement. The trial court advised Defendant that a sentencing hearing would be held at a later time and advised Defendant, "I just don't know that much about your situation so I can't really tell you what's going to happen" except that she was facing a fine of "at least a $2000 . . . for each of those three drug cases. So at the very minimum you'll have like $6000 in fines for those cases." The trial court added that the fines were mandatory. Defendant replied that she understood. The trial court added, "I don't know[,] there may be some restitution that might need to be imposed. I'll hear the facts here in a moment."

---

[2] The misdemeanor case is not an issue on appeal but is included in the context of the global plea agreement entered by Defendant.

The State indicated that Defendant sold methamphetamine to the same confidential informant (CI) on three occasions, October 7, 2019, October 9, 2019, and October 28, 2019, as part of an undercover operation monitored by the Narcotics Unit of the HCSD. For each buy, the informant was equipped with audio and video recording equipment, given $100 to purchase the methamphetamine, and paid $100 for participating in the undercover drug buy.

On October 7, 2019, Defendant sold 2.25 grams of methamphetamine to the CI for $100. On October 9, 2019, she sold 1.03 grams of methamphetamine and because the amount was short, Defendant charged the CI only $63; $37 was returned to the HCSD. In the third drug case, on October 28, 2019, Defendant sold the CI 3.34 grams of methamphetamine for $100. All the drug buys occurred in Defendant's home in Lexington, Henderson County, and were recorded by the CI. On April 18, 2020, Defendant was stopped for driving on a suspended license. She was cited but not arrested. Defendant affirmed the facts as provided by the State for each case as accurate.

Defendant pled guilty to the reduced Class B felony offenses of sale of methamphetamine over 0.5 grams and delivery of methamphetamine over 0.5 grams in all three drug cases: 20-027-2, 20-028-2, and 20-029-2. She also pled guilty to driving on a suspended license as charged in case 20-0292-2. The length, manner, and alignment of sentencing was to be determined at a sentencing hearing. There was no discussion of restitution at the plea colloquy, nor was restitution included on the plea petition.

*Sentencing Hearing*

At the sentencing hearing on December 8, 2021, the State introduced Defendant's presentence report as its proof. The State clarified that Defendant was actually a Range II multiple offender, not a Range III persistent offender as indicated in its notice for enhanced punishment; however, the parties had agreed for purposes of sentencing that Defendant would be sentenced as a Range I standard offender. The State argued that two enhancement factors should be applied to sentencing: that Defendant had a history of criminal convictions and criminal behavior in addition to those necessary to establish the appropriate range and that before trial or sentencing she failed to comply with the conditions of a sentence involving release into the community. T.C.A. § 40-35-114(1), (8).

The State also informed the trial court that Defendant "ha[d] agreed to stipulate to the restitution amounts for these buys." Defense counsel affirmed the stipulation "to the amounts that were listed in the discovery" and affirmed a second time when asked by the trial court. The State informed the court that it was asking for restitution in the following amounts in the following cases: $200 in case 20-027-2, $163 in case 20-028-2, and $200

- 3 -

in case 20-029-2. The State acknowledged that it had not put the restitution amount in the plea petition.

Defendant gave an allocution, stating that she had "a lot of time to think" during her incarceration and "wanted to accept full responsibility for [her] actions." She also stated that she "feel[s] the worst about what [she has] done to [her] children[,]" ages four, five, and six. She concluded her allocution by stating that she was "a good mother" and asked the court "for mercy and a chance."

The State argued for a ten-year sentence to serve with a minimum fine of $2,000 for each count in each drug case and for partial consecutive sentences. Defense counsel argued for a sentence of split confinement noting that Defendant had been incarcerated on the charges for fourteen months prior to sentencing. Defense counsel noted that Defendant's family was in the courtroom to show their support and that Defendant had no prior drug convictions other than a conviction for driving under the influence ("DUI"). Defense counsel stated that serving a lengthy sentence would not help Defendant's children and pushed for a community-based alternative to a sentence of confinement.

The State reminded the trial court that Defendant had committed new offenses while she was released on bond in the three drug cases. The record contained three orders revoking Defendant's bond on May 22, 2020. After much discussion and review of the case pleadings, it was clarified for the record that Defendant had posted a $30,000 bond in the three drug cases on February 14, 2020. She was charged with driving on a suspended license the next day resulting in case 20-092-2. She had also been charged and convicted of DUI in Madison County. Defense counsel confirmed this information and added that Defendant had been taken into custody in Henderson County after completing her sentence for DUI in Madison County. Although the court had set another bond, Defendant did not post it but chose to begin serving her sentence in the three drug cases. The trial court recalled that the bonding company had petitioned for exoneration on the $30,000 bond because Defendant had failed to appear in court. In response to Defendant's argument for leniency to care for her children, the State apprised the trial court that Defendant had a case pending in Henderson County for attempted aggravated child abuse based on Defendant's children having tested positive for methamphetamine while in her care.

After hearing the arguments of the parties, the trial court stated that it had considered the principles of sentencing, the nature and characteristics of Defendant's criminal conduct, the proof at the plea submission and sentencing hearings, including Defendant's allocution, her potential for rehabilitation and treatment, the statistical information provided by the Administrative Office of the Courts concerning sentencing for drug offenses, the presentence report, the nature of the underlying offenses, and Defendant's behavior since her arrest in these cases. The trial court considered the nature of the drug offenses "a

serious matter," noting that the controlled drug buys occurred in rather quick succession, over a short period of time, and with the exception of the second controlled buy, involved increasing amounts of methamphetamine. The trial court also considered the fact Defendant had been charged with DUI in another county while these cases were pending and she was on bond. The trial court observed that although the State had filed a notice for enhanced punishment, Defendant would be sentenced as a Range I standard offender "based upon the plea agreement that she entered into[.]"

Based on the presentence report, the trial court found that Defendant had twenty-six prior convictions, including eleven felony convictions and fifteen misdemeanor convictions. The trial court noted that Defendant was convicted of the most serious offense, aggravated assault, on October 7, 2005. The presentence report reflected that Defendant committed a drug offense while on probation for aggravated assault. The trial court determined that Defendant went to prison "on at least two different occasions" where she "[h]ad opportunities for drug treatment and opportunities for rehabilitation" but returned to using or possessing drugs once she was released. Defendant reportedly graduated from a treatment program at Teen Challenge in Milwaukee, Wisconsin in 2006-07, and stated that she was "drug/alcohol free from 2011 to 2019." She admitted that her primary drug problem was methamphetamine. The trial court found that Defendant had "an extensive history of failing to comply with the conditions of a sentence involving release into the community" because she had committed new offenses while under a supervision program. The trial court placed "great weight" on those factors. The trial court noted that Defendant had obtained her GED while incarcerated, but also noted that she had continued to use illegal drugs after undergoing drug treatment. Thus, the court found no applicable mitigating factors.

The trial court sentenced Defendant to ten years on each drug count and in each case merged the delivery conviction with the sale conviction. Defendant was sentenced to six months in the county jail for the misdemeanor conviction. The trial court imposed the mandatory minimum fine of $2,000 in each of the three drug cases and a $100 fine for the misdemeanor case. The trial court also ordered restitution in the three drug cases:

> I will order restitution to be paid by [] [D]efendant for those amounts in those three different cases because I do recall that she received money from the illegal sale and delivery of methamphetamine and I know the confidential informant had to be paid as well. So, I'll set restitution for those amounts as stated.

The trial court next considered whether to impose consecutive sentences and found that Defendant was an offender with an extensive criminal history:

[W]e're talking about I believe a total of – well, three felonies here today plus the prior [eleven] felony convictions. So, she's got [fourteen] felony convictions on her record.

Plus, she's got another misdemeanor conviction on her record in addition to the prior [fifteen] misdemeanor convictions that she had previously.

So, you know, this history is very extensive because it goes back to when she was about 18/19 years of age and had actually continued up until the present time until she's 42.

Based on those findings, the trial court ordered the ten-year sentences in cases 20-027-2 and 20-028-2 to be served concurrently along with the six-month misdemeanor sentence, and the ten-year sentence in case 20-029-2 to be served consecutively to the other cases for a total sentence of twenty years at 30% in the Tennessee Department of Correction.

The trial court then considered the imposition of fines:

I think she has the ability to pay fines and courts costs. She posted a $30,000 bond originally. She apparently had the ability to post a new bond, but according to counsel she decided not to post the new bond, but she posted bonds in Madison County on the DUI. She posted a bond on the driving on suspended license here.

So as I said, she does have some ability to pay the fines and costs. So, I don't find that she's indigent by any means.

Of course, she's hired an attorney to represent her as well, so again, I will order her to pay these fines and costs at a rate of $150 a month.

At the hearing, no mention was made of the total restitution amount. However, on the judgment forms, HCSD was identified as the victim, and Defendant was ordered to pay $200 in restitution in case 20-027-2, $163 in case 20-028-2, and $200 in case 20-029-2. The judgments also indicated: "Defendant is to pay fines, costs and restitution at $150 per month."

Because Defendant filed an untimely notice of appeal, she moved to waive the timely filing requirement which this court granted in the interest of justice. The matter is properly before the court.

**Analysis**

*I.     Restitution to the Henderson County Sheriff's Department*

Defendant claims the trial court erred in ordering restitution to the HCSD because the HCSD is not "a victim" as contemplated by the restitution statute. Alternatively, Defendant argues that should this court conclude that restitution was proper, the trial court nevertheless abused its discretion because it made no meaningful findings regarding her ability to pay, which was required at the time.[3] The State responds that Defendant has waived this issue because she stipulated to the restitution amount at the sentencing hearing and is only now raising it as an issue on appeal. The State adds that waiver notwithstanding, Defendant is not entitled to plain error relief because Defendant waived the issue for tactical reasons and failed to show that any substantial right was impacted or that consideration of the error is necessary to do substantial justice. In her reply brief, Defendant responds that the issue was not waived and if waived, she is entitled to relief under plain error.

At the sentencing hearing, defense counsel agreed twice in open court that Defendant stipulated to paying restitution to the HCSD in the amounts advanced to the CI for the drug buys. Defendant never argued against the victim's pecuniary loss or the restitution amount. Defendant argues that the issue is entitled to plenary review. Relying on *State v. Conley*, No. E2022-00237-CCA-R3-CD, 2023 WL 3736821 (Tenn. Crim. App. May 31, 2023), *no perm. app. filed*, Defendant argues that similar to her case, the defendant in *Conley*, "did not object to any part of the State's calculation of restitution at the sentencing hearing[.]" However, in *Conley*, the defendant objected to the amount of restitution ordered at the restitution hearing and the trial court's imposed payment schedule, *id.* at *3, but did not object to the trial court's calculation of the victim's pecuniary loss and the spreadsheet of the victim's itemized expenses prepared by the State. *Id.* at *1, 6. This court addressed the defendant's restitution issue without undergoing the rigors of plain error because, while a victim's pecuniary loss is distinct from the restitution amount, the latter cannot be calculated without the former. Indeed, we recognized that a remand in *Conley* to determine the victim's pecuniary loss could affect the restitution amount the defendant was ordered to pay. *Id.* at *6.

Consequently, in this case, Defendant has waived all but plain error review. Under plain error review, relief will only be granted when five prerequisites are met: (1) the record clearly establishes what occurred in the trial court, (2) a clear and unequivocal rule of law

---

[3] After the crimes and the entry of the plea, the restitution statute was amended. After January 1, 2022, trial courts *may* consider the financial resources and future ability of the defendant to pay or perform. T.C.A. § 40-35-304(d).

was breached, (3) a substantial right of the accused was adversely affected, (4) the accused did not waive the issue for tactical reasons, and (5) consideration of the error is necessary to do substantial justice. *State v. Rimmer*, 623 S.W.3d 235, 255-56 (Tenn. 2021) (citing *State v. Martin*, 505 S.W.3d 492, 504 (Tenn. 2016)).

"The purpose of restitution is not only to compensate the victim but also to punish and rehabilitate the guilty." *State v. Johnson*, 968 S.W.2d 883, 885 (Tenn. Crim. App. 1997). Restitution as a part of sentencing "is often ordered as a condition of probation or as an alternative to incarceration." *State v. Cavin*, 671 S.W.3d 520, 528 (Tenn. 2023) (citing T.C.A. §§ 40-35-104(c)(2), -304(a)). Challenges to restitution orders are reviewed under an abuse of discretion standard, affording a presumption of reasonableness to the trial court's ruling. *Id.*; *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *State v. Bohanon*, No. M2012-02366-CCA-R3-CD, 2013 WL 5777254, at *5 (Tenn. Crim. App. Oct. 25, 2013). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *Cavin*, 671 S.W.3d at 528 (quoting *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010)).

Pursuant to Tennessee Code Annotated section 40-35-304(a), "[a] sentencing court may direct a defendant to make restitution to the victim of the offense as a condition of probation." "Whenever the court believes that restitution may be proper or the victim of the offense or the district attorney general requests, the court *shall* order the presentence service officer to include in the presentence report documentation regarding the nature and amount of the victim's pecuniary loss." T.C.A. § 40-35-304(c) (2021) (emphasis added); *cf.* T.C.A § 40-35-304(g)(1) ("If there is no sentencing hearing or presentence report because the defendant's sentence is agreed upon and the payment of restitution is a part of the sentence, the plea agreement shall include the amount of restitution and the other performance requirements set out [in the statute]"). For purposes of the restitution statute, "pecuniary loss" means special damages, but not general damages, as substantiated by the evidence or agreed to by the defendant and reasonable out-of-pocket expenses incurred by the victim resulting from the victim's participation and cooperation in prosecution of the offense. *Id*. § 40-35-304(e)(1), (2).

In general, only "the individual or individuals against whom the offense was actually committed" are victims for purposes of restitution. *State v. Alford,* 970 S.W.2d 944, 946 (Tenn. 1998). To be a victim for purposes of restitution through a specific conviction, the individual must have suffered a loss as the "direct result" of that conviction. *See State v. Brasfield*, No. W2009-00026-CCA-R3-CD, 2010 WL 669222, at *3 (Tenn. Crim. App. Feb. 25, 2010) (concluding that the owner of an animal killed by an illegally set trap is a victim for purposes of restitution); *State v. Poole*, 279 S.W.3d 602, 606-07

(Tenn. Crim. App. 2008) (holding that the bank was a victim where the defendant pled guilty to misdemeanor theft for fraudulently withdrawing funds from the bank); *State v. Cross*, 93 S.W.3d 891, 895-96 (Tenn. Crim. App. 2002) (finding that a homeowner's insurance carrier was the actual victim of the crime where the defendant pled guilty to presenting a false insurance claim and arson); *State v. Webb*, 130 S.W.3d 799, 836-37 (Tenn. Crim. App. 2003) (concluding that the humane society who cared for animals seized from a defendant who committed animal cruelty is a victim because statute obligates state-sponsored shelters to care for such animals); *cf. Alford*, 970 S.W.2d at 946 (finding that an assault victim's medical insurance carrier is not a victim under the restitution statute); *State v. Mackie*, No. E2008-00816-CCA-R3-CD, 2009 WL 400645, *5 (Tenn. Crim. App. Feb. 18, 2009) (holding that the person who purchased a storage shed that the defendant had stolen from another person was not a "victim" because her loss was not the direct result of the defendant's theft from the named victims); *State v. Gagne*, No. E2007-02071-CCA-R3-CD, 2009 WL 331327, at *3 (Tenn. Crim. App. Feb. 11, 2009) (holding that the cemetery and church who provided the gravestone and held a funeral for an individual who died as the result of the defendant's reckless endangerment were not victims under the statute); *State v. Graves*, No. W2021-01476-CCA-R3-CD, 2023 WL 1989587, at *7 (Tenn. Crim. App. Feb. 14, 2023) (concluding that the Tennessee Bureau of Investigation ("TBI") is not a victim within the meaning of restitution statute where the TBI was not referenced in indictments, was not the direct object of the defendant's crimes, or suffered any unexpected harm), *no perm. app. filed*.

Turning our attention to the plain error analysis, as to the first prerequisite, the record clearly establishes what occurred in the trial court. On the judgment forms, Defendant was ordered to pay a total of $563 in restitution to the HCSD in the three drug cases for funds the HCSD gave the CI for the drug purchases. However, there was no mention of the specific restitution amount at the plea hearing, in the plea petition, or even at the sentencing hearing. There was also no mention of restitution in the presentence report although documentation is required under the statute when restitution is to be determined at a hearing. *See* T.C.A. § 40-35-304(c).

As to the second prerequisite, we conclude that a clear and unequivocal rule of law was breached when the trial court ordered restitution to the HCSD. This very issue was considered by a panel of this court in *State v. Graves*, 2023 WL 1989587, at *5-7, and this court concluded that the TBI, which expended funds to buy drugs from a defendant through a CI, was not a victim within the meaning of the restitution statute. Similarly, in this case, the HCSD was not a "victim" as contemplated by the restitution statute. Under these particular facts, the HCSD "was not referenced in the indictments, was not the direct object of the [D]efendant's crimes or the entity against whom the offenses were actually committed." *Id*. at *7. The HCSD did not suffer any unexpected harm as a result of Defendant's criminal conduct. *Cf. People v. Barnett*, 237 A.D.2d 917, 919 (N.Y. Sup. Ct.

- 9 -

App. Div. 1997) (affirming a county court order requiring a defendant to pay restitution to reimburse the police for damage which the defendant had caused to a police car, finding that such damage was not a normal cost of providing law enforcement services).

For the third prerequisite, we consider whether a substantial right of Defendant was adversely affected. The State contends that Defendant agreed to pay restitution in exchange for a reduction of the drug offenses from Class A, drug-free school zone offenses to Class B felonies. However, as Defendant points out, because there was no discussion of restitution at the plea hearing or on the plea petition, the record does not support the State's argument. At the plea hearing, the trial court advised Defendant about the nature of her plea:

> [L]et me go over a few things with you. You're entering what we refer to as *an open plea which means there is no plea agreement.* We'll just have a sentencing hearing here in a few weeks and I'll get a presentence investigation report prepared which will give me more information about you.

(emphasis added). Because the award of restitution was not authorized, and the nature of the plea – open or agreed upon – was unclear, the right of Defendant to enter a knowing and voluntary plea was adversely affected. *State v. Virgil*, 256 S.W.3d 235, 241 (Tenn. Crim. App. 2008) (concluding defendant's plea was not knowingly and voluntarily entered where inducement for plea was unenforceable condition that his state sentence would be served concurrently with previously imposed federal sentence).

The fourth consideration for plain error review is whether Defendant waived this issue for tactical reasons. The State contends that by pleading guilty to the reduced charges, Defendant "significantly reduced her [sentencing] exposure." *Studdard v. State*, 182 S.W.3d 283, 288 (Tenn. 2005) (holding that plain error was not met where the record "strongly suggest[ed]" defendant pled guilty to a lower grade offense than that charged for tactical reasons). Defendant responds again that because restitution was not mentioned at the plea hearing or included in the plea petition or presentence report, the record does not support the claim that the waiver was for tactical reasons. "[T]here was no tactical advantage to agreeing to restitution to the [HCSD] as a 'victim' prior to this Court's decision in *Graves*." We agree. *See State v. Gomez*, 239 S.W.3d 733, 742 (Tenn. 2007) (concluding that there was no record defendants waived Sixth Amendment claims to the trial court's use of enhancement factors for tactical reasons where "defense counsel, like many others in the legal community, did not realize until *Blakely* was decided that the defendants had a potential claim for relief").[4]

---

[4] *See, e.g.*, *Blakely v. Washington*, 542 U.S. 296 (2004).

Finally, consideration of this error is necessary to do substantial justice. Because a law enforcement agency is not a "victim" when it spends funds to pursue a drug buy through an informant, those expended funds cannot constitute a "victim's pecuniary loss" under the statute. Therefore, we vacate the trial court's orders of restitution to the HDSC, and remand for entry of corrected judgments reflecting its deletion. Because we vacate the order of restitution, we need not consider Defendant's claim that the trial court made no meaningful findings about Defendant's ability to pay restitution.

## II.     *Imposition of Fines*

Defendant claims that the trial court's failure to consider her ability to pay the fines was an abuse of discretion and asks this court to waive the imposed fines. The State argues that the trial court considered Defendant's ability to pay and other factors relevant under the sentencing scheme. Defendant responds that her ability to post bond was not an appropriate factor to consider in determining the fines.

We observe that in the plea petition, Defendant agreed to waive the right to have a jury impose a fine. *See* Tenn. Const. art. VI, § 14. Further, Defendant did not object to the fines or argue for a waiver of the fines at sentencing. *State v. St. Clair*, No. M2012-00578-CCA-R3-CD, 2013 WL 1611206, at *4 (Tenn. Crim. App. Apr. 16, 2013) (reviewing the issue of fines for plain error). Accordingly, to obtain relief, the error, if any, must constitute plain error.

Fines imposed as part of a criminal sentence are to be reviewed in the same manner as other aspects of the sentence. *See State v. Taylor*, 70 S.W.3d 717, 722-23 (Tenn. 2002); *State v. Bryant*, 805 S.W.2d 762, 765-66 (Tenn. 1991). The imposition of a fine is to be based upon the factors and principles of sentencing, such as, "prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors[,]" that are relevant to an appropriate, total sentence. *Taylor*, 70 S.W.3d at 723 (citing *State v. Blevins*, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997)). A defendant's ability to pay the fine is among the factors to be considered but is not necessarily a controlling factor. *State v. Patterson*, 966 S.W.2d 435, 446 (Tenn. Crim. App. 1997). "The seriousness of a conviction offense may also support a punitive fine." *Taylor*, 70 S.W.3d at 723. This court reviews a trial court's imposition of a fine, which is part of a defendant's sentence, under an abuse of discretion standard. *Bryant*, 805 S.W.2d at 767; *Bise*, 380 S.W.3d at 707.

Convictions for the sale and delivery of methamphetamine carry a minimum fine of $2,000, and a maximum fine of $100,000. T.C.A. §§ 39-17-417(c)(1); 39-17-428(b)(9). The minimum fine for a convicted offense "shall be mandatory and shall not be reduced, suspended, waived or otherwise released by the court," unless the trial court determines

that a defendant is indigent, payment of the fine would result in "severe economic hardship," or imposition of the fine would "not be in the interests of justice." *Id.* § 39-17-428(d)(1).

The criteria for plain error have not been met here. Namely, no clear and unequivocal rule of law has been breached. Defendant was apprised of the minimum fine in the drug cases, she testified that she understood and did not object, and the trial court imposed the mandatory minimum amount. The record is sufficient to justify affirming the amount of the fines imposed by the trial court. As we will discuss in our analysis of the consecutive sentencing issue, Defendant's record establishes an extensive criminal history including twenty-six prior convictions and multiple probation or parole revocations, including violations for committing new offenses while on probation, parole, or released on bond. In addition to her criminal history, the trial court considered the seriousness of the underlying offenses, Defendant's potential for rehabilitation, enhancement and mitigating factors, and her ability to pay based on the available record. Because she did not object to the fines, there was no attempt to persuade the trial court to lessen or waive the fines. In our view, the fines imposed in this case are part of an appropriate total sentence, and we conclude that the trial court did not abuse its discretion in its imposition of the fines. Defendant is not entitled to relief as to this issue.

### III. Partial Consecutive Sentencing

Defendant contends the trial court erred in ordering partial consecutive sentences because the court failed to place specific findings on the record that Defendant's sentence complied with the purposes and principles of sentencing as set forth in Tennessee Code Annotated sections 40-35-102 and -103. Defendant maintains that this court cannot infer that the trial court considered these principles or review her sentence de novo because the record is insufficient. The State argues that this issue lacks merit because the trial court made "an extensive record explaining its sentencing decision, including explicitly stating that it considered the principles of sentencing." We agree with the State.

When the record shows that the trial court imposed a sentence within the appropriate range after a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *Bise*, 380 S.W.3d at 707. This standard applies to a trial court's decision regarding consecutive sentencing. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). The presumption of reasonableness applies to a trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b). *Id.* at 861. "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful

appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.* at 862 (citing Tenn. R. Crim. P. 32(c)(1)) ("If the defendant pleads guilty or is convicted in one trial of more than one offense, the trial judge shall determine whether the sentences will be served concurrently or consecutively.").

Under Tennessee Code Annotated section 40-35-115(b), the trial court has discretion to order sentences to run consecutively if it finds by a preponderance of the evidence that "[t]he defendant is an offender whose record of criminal activity is extensive[.]" T.C.A. § 40-35-115(b)(2). On December 9, 2022, just over one year after the trial court sentenced Defendant, the Supreme Court held that trial courts should consider the following nonexclusive factors when finding that a defendant has an extensive record of criminal activity for purposes of discretionary consecutive sentencing:

> (1) The amount of criminal activity, often the number of convictions, both currently before the trial court for sentencing and prior convictions or activity;
>
> (2) The time span over which the criminal activity occurred;
>
> (3) The frequency of criminal activity within that time span;
>
> (4) The geographic span over which the criminal activity occurred;
>
> (5) Multiplicity of victims of the criminal activity; and
>
> (6) Any other fact about the defendant or circumstance surrounding the criminal activity or convictions, present or prior, that informs the determination of whether an offender's record of criminal activity was considerable or large in amount, time, space, or scope.

*State v. Perry*, 656 S.W.3d 116, 129 (Tenn. 2022) (footnotes omitted). Prior convictions or criminal activity "may demonstrate 'a consistent pattern of operating outside the confines of lawful behavior' and provide some stronger measure of justification for finding that a defendant is an offender whose record of criminal activity is extensive." *Id*. at 131 (quoting *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013)).

"The underlying principle [of sentencing] . . . is that the trial court must be afforded broad discretion in its sentencing decisions and the presumption of reasonableness will apply unless the trial court fails to address on the record the principles and purposes of our Sentencing Act." *Pollard*, 432 S.W.3d at 861 (citing *Bise*, 380 S.W.3d at 709-10). In addition to the specific criteria in Tennessee Code Annotated section 40-35-115(b), consecutive sentencing is guided by the general sentencing principles providing that the

length of a sentence be "justly deserved in relation to the seriousness of the offense" and "no greater than that deserved for the offense committed." *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002) (quoting T.C.A. §§ 40-35-102(1) and -103(2)); *see also Perry*, 656 S.W.3d at 128. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401, Sentencing Comm'n Cmts.

Although the trial court did not have the benefit of *Perry*, the record shows the court identified facts related to the amount, scope, time span, and frequency of Defendant's criminal activity to determine that partial consecutive alignment of the four underlying cases was warranted. Defendant, who was forty-two years old at the time of sentencing, had been in the criminal justice system since age nineteen. She had twenty-six prior convictions including eleven felony convictions and fifteen misdemeanor convictions. As detailed by the trial court at sentencing, the presentence report showed that Defendant was convicted of an offense every year from 2001 to 2009, and the only reason there was a gap between her last conviction in 2009 and the present case was because she was incarcerated for violating her probation or parole. Her supervision history shows that the probation she received for the ten-count felony forgery convictions was revoked on January 20, 2009. She was paroled seven months later only to have the parole revoked and ordered to serve the sentence in confinement.

Indeed, Defendant's criminal record showed that she had failed to comply with conditions of sentences involving release into the community. Despite receiving a probationary sentence multiple times, Defendant continued to engage in criminal behavior. Her record began with mostly misdemeanor traffic offenses and escalated to felony offenses. Notably, Defendant was released on bond in the three drug cases in this appeal when she was arrested and charged with driving on a suspended license in the fourth case.

Based on the trial court's findings, Defendant's convictions and probation violations demonstrate "a consistent pattern of operating outside the confines of lawful behavior." *Perry*, 656 S.W.3d at 131 (quoting *Dickson*, 413 S.W.3d at 748). The record supports the trial court's finding that Defendant is an offender whose record of criminal activity is extensive. *See* T.C.A. § 40-35-115(b)(2). Defendant has therefore failed to overcome the presumption that her partial consecutive sentence of twenty years is reasonable.

Finally, although the trial court did not explicitly state that the aggregate twenty-year sentence was the "least severe measure necessary" to achieve the purposes of the sentence and that the sentence was "justly deserved in relation to the seriousness of the offense," we conclude that the record is sufficient to infer the trial court considered both principles. *See State v. Henderson*, No. W2022-00882-CCA-R3-CD, 2023 WL 4105937, at *7 (Tenn. Crim. App. June 21, 2023) (affirming imposition of consecutive sentences

because the record reflected that the trial court considered, but did not explicitly state, whether the length of the sentence was the least severe measure necessary), *no perm. app. filed*. We find this case to be factually distinct from *State v. Biggs*, 482 S.W.3d 923 (Tenn. Crim. App. 2015) (Woodall, J., dissenting), upon which Defendant relies for relief. In *Biggs*, unlike here, the trial court "expressly articulated" its reasons for imposing a forty-four-year sentence under the principles of sentencing, but the majority of the court held that the trial court "violated those principles," thereby resulting in an abuse of discretion. *Id.* at 927-28. The forty-nine-year-old defendant was sentenced to a forty-four-year sentence at 85% for three counts of aggravated robbery with no history of previous violent offenses, and "the robberies were committed with a toy gun, no one was injured, and two of the victims knew the gun was plastic." *Id.* at 927. We decline to apply its reasoning here.

The trial court in this case examined Defendant's lengthy record in painstaking detail. Multiple probationary sentences did not dissuade Defendant from continuing to engage in criminal activity. As for present criminal activity, the trial court was concerned with the seriousness of the offense, specifically noting the large quantities of methamphetamine Defendant sold in her home in rather quick succession, over a short period of time. The trial court's recitation of the underlying facts reflects the court's finding that the sentence was "justly deserved in relation" to the seriousness of the crime. The fact that Defendant's three children were harmed by her actions supports this important sentencing principle.

The trial court's decision to impose a twenty-year sentence facilitated appellate review and was fully supported by the record. The trial court's determination also implicitly reflects that the twenty-year sentence was the least severe measure necessary to achieve the purposes of the sentence imposed and "justly deserved in relation to the seriousness of the offense[s]." Accordingly, the Defendant is not entitled to relief.

## Conclusion

We affirm the sentences and fines imposed by the trial court, but we vacate the trial court's orders of restitution to the Henderson County Sheriff's Department, and remand for entry of corrected judgments reflecting deletion of those restitution amounts.

_____
JILL BARTEE AYERS, JUDGE